260 So.2d 83 (1972)
LAMASTUS & ASSOCIATES, INC. and Maryland Casualty Company
v.
GULF INSURANCE COMPANY.
No. 4866.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
Rehearings Denied April 18, 1972.
Writs Refused May 23, 1972.
Francipane, Regan, Post & St. Peé, Richard T. Regan, Metairie, for plaintiffs-appellees.
Bienvenu & Culver, Robert N. Ryan, New Orleans, for defendant-appellant.
Before CHASEZ, STOULIG and BAILES, JJ.
BAILES, Judge.
This suit was brought by plaintiffs, Lamastus & Associates, Inc., and Maryland Casualty Company, against Gulf Insurance Company, defendant, to collect a windstorm loss to a building owned by Lamastus, together with penalty and attorney fees provided by LSA-R.S. 22:658 on the ground that defendant's refusal to pay the loss was arbitrary, capricious and unreasonable.
For simplicity, plaintiff, Lamastus & Associates, Inc., will be referred to as Lamastus; plaintiff, Maryland Casualty Company, as Maryland; and defendant, Gulf Insurance Company, as Gulf.
Sometime prior to August 17, 1969, this being the date the hurricane Camille hit the New Orleans area, Lamastus purchased from the U.S. Government the Naval barracks building located on Lakeshore Drive *84 at Bayou St. John on the south shore of Lake Pontchartrain. Lamastus purchased this building for the purpose of relocating it on the north shore of the lake on property it owned.
At the time of its purchase, the building was insured by Maryland, however, in order to obtain protection against the hazards involved in cutting and moving the building in sections across the lake, it was necessary to obtain insurance coverage through a type of policy not written by Maryland. The desired coverage was obtained from Gulf.
Three of the six sections into which the building was cut had been moved to the north shore when hurricane Camille struck. In the hurricane, the three sections on the north shore were damaged in the amount of $24,629.00.
Upon being notified of the loss, the agent from whom Lamastus bought both insurance policies notified Maryland of the loss. In attempting to effect a settlement, Maryland approached Gulf from the standpoint of getting Gulf to pay the total loss, and failing in that, then called on Gulf to pay a proportionate share of the loss. Gulf refused to pay any part of the loss, after which Maryland paid Lamastus $24,629.00, less the $100 deductible portion, in settlement. Maryland was subrogated to the claim of Lamastus against Gulf to the extent of its payment.
Herein Maryland seeks to recover $24,529.00, and Lamastus seeks recovery of the $100.00 deducted from the Maryland settlement. After trial in the court a quo, Maryland was granted judgment in the amount of $24,529.00 and Lamastus recovered the $100.00 it had sued for, and the claims for penalty and attorney fees under LSA-R.S. 22:658 were denied. From this adverse judgment, Gulf has appealed.
The trial court held that the Maryland policy did not cover the three damaged sections because these sections had not been placed on permanent foundations, and that there was coverage by the Gulf policy by the specific terms of the policy.
Gulf, in its argument before this court, admitted that its policy was in effect and did provide coverage for the windstorm loss.
The primary question for us to resolve is whether the Maryland policy provided coverage at the time of the loss. By the express terms of the policy, the subject building was covered by Maryland while situated on the south shore. To assure future coverage on the north shore, Mr. Eugene Singer testified that on June 16, 1969, he sent the following binder to Maryland:
"Please keep bound coverage (vacancy and unoccupancy) barracks building. Policy is to cover at two locations lakefront and after removed (by sections) to across the Lake. One-fifth is over there now so as coverage reduces at Lakefront it increases across the lake to new locations. Will keep you advised but want you to know coverage bound."
The above quoted binder is for all intents and purposes an endorsement to the policy. It is plain that it does not specify precisely at what point in relocation of the building sections, the Maryland policy reattaches for coverage. Thus it is ambiguous in this particular.
In our consideration of when in point of relocation of the sections, there was coverage in view of the above-mentioned ambiguity, we must be guided and controlled by law of interpretation of insurance contracts. In Wilks v. Allstate Insurance Company, La.App., 195 So.2d 390 (1967), at page 401, the court stated:
"(18-20) * * * In cases of ambiguity, policy provisions are construed most favorably to the insured and against the insurer; of the permissible constructions, the courts will adopt that which effectuates coverage over that which defeats it. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d *85 171, * * *. Furthermore, limitations of and exceptions to the coverage of a policy must be clearly expressed and in case of doubt are construed unfavorably to the insurer who, after all, drafted the policy. Kendrick v. C. N. Mason Co., 234 La. 271, 99 So.2d 108, * * *."
Being lead by interpretative provisions, we hold the Maryland policy provided coverage to the windstorm damaged sections of the building when the sections arrived at the new location on the north side of the lake. We are constrained to this conclusion because we must interpret the endorsement to effectuate coverage.
Consequently, we find the trial court's reasoning that coverage on the north side of Lake Pontchartrain by Maryland did not re-attach until the building was located on its permanent foundation is not warranted under the terms of the binder or of the Maryland policy.
While the primary position of Maryland is that there was no coverage by its policy because the sections of the buildings were not on the permanent foundations, in the alternative it argues that if this court should hold that the Maryland policy was in force, "there is no Louisiana decision relative to which of two policies, one general and one specific, should be applicable to a loss where the specific policy has an excess or escape clause. In such event it is permissible for the Louisiana Courts to look to other decisions from other jurisdictions for guidance. * * *."
We find no jurisprudence in this State dealing with a case where there is dual coverage which subscribes to the designation of one policy as a specific policy and the other as a general policy. We believe the correct position is to treat both policies simply as providing windstorm coverage herein.
Gulf's position is that it has no responsibility for payment or contribution to this loss because Maryland's policy was effective and provided coverage of the peril also; and that the following special condition of its (Gulf's) policy relieves Gulf of liability, namely:
"7. This Company shall not be liable for loss if, at the time of loss, there is any other valid and collectible insurance which would attach if this insurance had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all such other insurance has been exhausted."
It contends that, as Maryland's policy is in the amount of $100,000.00, and as the loss is less than that amount, the above quoted "escape" clause excuses it from liability; that the Maryland policy provides primary coverage, and its policy is only secondary coverage; and that "excess" coverage is not called on for payment until the primary coverage is depleted.
The Maryland policy contains, among other clauses, a provision covering apportionment. This provision is:
"Apportionment: This Company shall not be liable for a greater proportion of any loss * * * from any peril or perils included in this endorsement than (1) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, or which would have covered the property except for the existence of this insurance, whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured hereunder, * * *."
The windstorm loss to the property of Lamastus covered by the Maryland policy was one of the perils included in the endorsement from which the above apportionment was extracted.
Thus, we have before us the "escape" or "excess" clause of the Gulf policy under which Gulf claims freedom from liability as the Maryland policy provides coverage in the amount of $100,000.00, and as the *86 loss is less than that amount. Opposed to this provision of Gulf's policy is the apportionment clause of the Maryland policy which, by its terms, limits its liability.
We can find no prior judicial interpretation of the two limiting or exclusionary clauses as opposed to each other affecting the same loss on all fours with the instant case.
There are many judicial interpretations of "pro rata", "escape" and "excess" clauses in automobile liability insurance policies where there is primary coverage as opposed to protection afforded an insured under secondary coverage; and cases are legion involving interpretation of provisions where the insurance policies both provide primary coverage and each contain "excess" clauses which are held to be mutually repugnant, and in which case assessment of liability is made under the "pro rata" clauses which are found not to be repugnant. Such are the cases of Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116 (1968); Lincombe v. State Farm Mutual Auto. Ins. Co., La.App., 166 So.2d 920 (1964), and State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co., La.App., 184 So.2d 750 (1966).
In the instant case, the conflict is between the "escape" clause of the Gulf policy and the "apportionment" clause of the Maryland policy. The Gulf policy "escape" clause proclaims no liability under the instant facts, whereas the Maryland "apportionment" clause in effect declares no liability to a certain extent as therein limited.
Having found no Louisiana case involving the same or similar facts of this instant case, and the parties have not directed our attention to any, either, we allude to the nearest comparable conflict arising under an automobile liability policy provision in the case of Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 341 P.2d 110 (1959) on rehearing, 219 Or. 110, 346 P.2d 643, 76 A.L.R.2d 483. The court therein stated:
"The `other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an `escape clause') or that used by St. Paul (usually referred to as an `excess clause') or that used by Oregon (usually referred to as a `prorata clause'). In our opinion, whether one policy uses one clause or another, when any come in conflict with the `other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.
"* * *
"As seen above, in the case of fire insurance, when a loss is prorated in the ratio which the limits of the policies bear to the total coverage, the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy."
From our study and research on this subject, we find the clause in the Gulf policy disclaiming liability and the Maryland policy clause apportioning the loss to be in conflict and are repugnant to each other. We believe, and so hold, that the loss must be pro rated or apportioned on the following basis: Each insurer will bear that proportion of the loss equal to the same proportion that its coverage bears to the total amount of enforceable and collectible insurance. The coverage of Gulf is $150,000.00 and the coverage of Maryland is $100,000.00. The total amount of enforceable and collectible insurance is $250,000.00. Gulf must bear three-fifths of the loss and Maryland must bear two-fifths of the loss, or 3/5th of $24,529.00 and 2/5th of $24,529.00 respectively, and in addition thereto, Gulf must pay 3/5th of the $100.00 deductible portion owed to Lamastus.
*87 In view of our judgment herein, the demand for penalty and attorney fees is rejected.
Accordingly, the judgment of the trial court is amended to provide that there is judgment herein in favor of Maryland Casualty Company and against Gulf Insurance Company, in the full sum of $14,717.40, together with legal interest thereon from date of judicial demand until paid, and the judgment of the trial court is further amended to provide that there is judgment herein in favor of Lamastus & Associates, Inc., and against Gulf Insurance Company, in the full sum of $60.00, together with legal interest thereon from date of judicial demand until paid. Defendant is cast for costs incurred in the trial court and this court.
Amended, and as amended, affirmed.