RICHARD A. JENSEN, APPELLEE, V.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY,
A CORPORATION, APPELLANT.

304 N.W.2d 51

Filed April 3, 1981. No. 43314.

Harold W. Kauffman and Eugene P. Welch of Gross, Welch, Vinardi, Kauffman, Day & Langdon for appellant.

John R. Douglas and Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This was a suit for a declaratory judgment. The District Court was asked to determine whether or not a certain policy of insurance issued by Universal Underwriters Insurance Company, a corporation (Underwriters), afforded coverage to the plaintiff, Richard A. Jensen, against any liability which he might have as the result of an automobile accident which occurred on April 1, 1977. The court found in favor of Jensen, declaring that coverage was available, and Underwriters has appealed. We affirm.

By reason of his employment, Jensen had available for his use a certain 1976 Pontiac automobile leased by his employer, Byers Brothers, from Nishna Valley Leasing, Inc. Nishna Valley Leasing together with McAlpin Motors were corporations with common ownership who were both named as insureds under a garage liability policy, No. 483496D, issued by Underwriters. A few days prior to April 1, 1977, the 1976 Pontiac was taken into McAlpin Motors for repairs, which company loaned to Jensen as a temporary replacement automobile a 1975 Pontiac owned by McAlpin. It was this automobile which Jensen was driving on April 1, 1977, when he was involved in an accident with a pedestrian who then filed suit against Jensen seeking money damages.

At the time of the accident referred to, the Hartford Accident and Indemnity Co. had in full force and effect an automobile liability insurance policy issued to Byers Brothers which included as insureds its employees and specifically covered the previously mentioned leased 1976 Pontiac.

Although the parties tried the case as if there were no real factual issues, we are faced at the outset with some confusion as to the identity and contents of the Underwriters policy. In response to an interrogatory

served on Underwriters by Jensen requesting that the terms of the garage liability policy be set forth, Underwriters furnished what has been identified as exhibit 2. This is a series of printed insurance policy forms. The problem, however, is that they appear to be part or all of three different policies. The first series consists of two pages, the first of which is entitled "Unicover Coverage Part No. 400 Garage Insurance," and which contain, respectively, the identifications "Page 2 . . ." and "Page 3 . . . ." In addition, the first page has printed at the top "Edition September 1973," and at the bottom of both pages appears "(9-73)" and "Copyright 1973 Universal Underwriters Insurance Company." The second series is similarly captioned as "Unicover . . ." but is numbered from page 2 through page 9, and is identified as "Edition December 1978," "(12-78)," and "Copyright 1973, 1975, 1977, 1978 Universal Underwriters Insurance Company." The third group of forms is also captioned "Unicover . . . ," is numbered from page 2 through page 9, and is identified as "Edition March 1977," "(3-77)," and "Copyright 1973, 1975, 1977 Universal Underwriters Insurance Company." The remaining pages of exhibit 2 consist of computer printouts obviously purporting to identify the named insureds, the policy periods, which include the critical date of April 1, 1977, the applicability of various coverages, and other information normally found in insurance policy face sheets. However, there is nothing about any of the information contained in those printouts which identifies the effective date of any particular edition of the three groups of forms.

We would observe that although the burden of proof is on the plaintiff to furnish sufficient evidence upon which a declaratory judgment can be made, Underwriters is bound by answers to interrogatories, i.e., the representation that exhibit 2 contains the proper policy provisions, even though they may be incorrect or incomplete, as long as the applicable provisions can properly be identified and interpreted.

The two pages identified as the 1973 edition conceivably could be applicable to the April 1, 1977, accident because it is reasonable to believe that the words "Edition September 1973" and "Copyright 1973 . . ." indicate that they were in existence from and after that printed date. However, in comparing them with the nine pages of the 1978 and 1977 editions, it becomes obvious that the one for 1973 is incomplete. A reading of the entire two pages reveals no definition of the term "insured," which is critical to any insurance policy.

At the other extreme is the 1978 edition. It could not seriously be contended that a group of forms which were copyrighted in 1978 could be effective during the year 1977.

That of course leaves the remaining policy, the edition of March 1977, which in all reason and logic would be applicable to an April 1977 event. It must be assumed that when Underwriters represented that exhibit 2 comprised the policy in effect at the critical date, it meant what it said. An examination of the 1977 edition reveals a policy of insurance complete in itself.

Looking to the 1977 policy, then, it quite clearly applies to this specific hazard, i.e.: "I. ADDITIONAL DEFINITIONS . . . AUTOMOBILE HAZARD 1 . . . (3) the ownership, maintenance or use of any AUTOMOBILE owned by the NAMED INSURED while furnished for the use of any person."

Taking up for the moment the Underwriters claim made in the court below that the particular use was specifically excluded, we find the following in the policy: "II. GARAGE LIABILITY . . . EXCLUSIONS This insurance does not apply . . . (e) to BODILY INJURY or PROPERTY DAMAGE arising out of the . . . operation, use . . . of any . . . (2) AUTOMOBILE . . . (ii) while rented to others by the NAMED INSURED unless to a salesman for use principally in the business of the NAMED INSURED . . . ." However, Underwriters ignores page 6 of the insurance contract, which states as follows: "ENDORSEMENT NO. 6 CUS-

TOMER RENTAL . . . It is agreed that Exclusion (e), (2), (ii) of Section II Garage Liability is deleted in its entirety and replaced by the following Exclusion: (ii) while rented to others by the NAMED INSURED . . . unless to a customer of the NAMED INSURED while such customer's AUTOMOBILE is temporarily left with the NAMED INSURED for service, repair . . . ." Even though Jensen's possession of the 1975 Pontiac was indirectly the result of a lease of the primary automobile, the 1976 Pontiac, we believe that his possession of the 1975 automobile on the date of the accident was as a result of a temporary loan while his own automobile was being repaired. Clearly, Jensen's rental, if such be the case, came within the exception to the exclusionary section.

Finally, the critical question is whether or not Jensen was an "insured" within the meaning of Underwriters' policy. The appropriate language is found in section "IV PERSONS INSURED" of the policy. Therein it is stated: "Each of the following is an INSURED under this insurance to the extent set forth below: . . . (3) with respect to the AUTOMOBILE HAZARD; . . . (b) any other person while actually using an AUTOMOBILE covered by this Coverage part with the permission of the NAMED INSURED, provided that such other person (i) *has no automobile liability insurance policy of his (her) own, either primary or excess* . . . ." (Emphasis supplied.) Both parties agree that the particular automobile being used was covered by the policy and that Jensen had the permission of the named insured to use it.

The only problem remaining concerns the italicized portion of the last-quoted language. As earlier stated, Jensen, at the time of the accident, was covered by a policy of automobile liability insurance on the automobile which he regularly drove. That policy contained the following language: "VIII. ADDITIONAL CONDITION Other Insurance — Temporary Substitute and Newly Acquired Automobiles    With respect to a *temporary substitute automobile,* this insurance shall be excess insurance over any other valid and collectible

insurance available to the *insured*." It is the contention of Underwriters that, assuming everything else was as claimed by Jensen, he was not an insured under its policy because, to be so classified, he must have had "no automobile insurance policy of his . . . own, either primary or excess."

A similar conflict between the automobile owner's policy and the driver's policy was resolved against the position of Underwriters in *Bituminous Cas. Corp. v. Andersen*, 184 Neb. 670, 673, 171 N.W.2d 175, 176 (1969): "Where an excess insurance clause in a driver's automobile liability policy and a no-liability clause in the automobile owner's liability policy apparently conflict, the no-liability clause is ineffective and the driver's insurance excess."

Although Hartford Accident and Indemnity Co. is not a party to this action, and we are not called upon to declare its rights, in keeping with the rule laid down in *Bituminous, supra*, we agree with the judgment of the District Court that the policy of insurance issued by Underwriters affords coverage to Jensen, and that judgment is affirmed.

AFFIRMED.