HORACE MANN INSURANCE COMPANY, J. E. MARTIN, AND PAUL G. HEATON v. CONTINENTAL CASUALTY COMPANY

No. 8118SC240

(Filed 17 November 1981)

1. **Insurance § 149— professional liability insurance—two policies—excess insurance clause—other insurance clause—primary insurer**

   Where plaintiff insurer's professional liability policy insuring a school superintendent and a school principal contained a standard "excess insurance" clause, defendant insurer's indemnity policy insuring the superintendent and principal contained the standard "other insurance" or "escape" clause, and each policy would have separately covered the amount paid in settlement and defense of a dismissed teacher's federal court action against the insureds were it not for the existence of the other policy, the policy issued by defendant which contained the "other insurance" or "escape" clause provided the primary coverage and the policy issued by plaintiff which contained the "excess insurance" clause provided excess coverage only.

2. **Insurance § 149— liability insurance—denial of coverage by primary insurer— defense by excess carrier—subrogation against primary carrier**

When the primary insurance carrier denies coverage and refuses to provide a defense to the insured, the excess insurance carrier may provide a defense and effect settlement and thereafter subrogate against the primary carrier to recover its expenses, at least when the injured party has not sued for an amount in excess of the primary coverage.

APPEAL by defendant from *Kivett, Judge.* Order entered 25 November 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 14 October 1981.

This is an appeal from summary judgment in an action between two insurance companies to determine which is responsible for paying a claim. Both the corporate plaintiff, Horace Mann Insurance Company (Horace Mann) and the defendant, Continental Casualty Company (CNA) had issued policies which covered the claim in controversy. On the basis of affidavits and certain admissions by CNA in its Answer and in response to the plaintiffs' Request For Admissions, summary judgment was entered in favor of the plaintiffs, in the amount of $52,479.68. The issue on appeal is whether summary judgment was properly granted for the plaintiffs.

*Smith, Moore, Smith, Schell & Hunter, by Martin N. Erwin, for plaintiff appellees.*

*Perry C. Henson, for defendant appellant.*

BECTON, Judge.

I

The facts are undisputed. In December 1977, the individual plaintiffs, J. E. Martin and Paul G. Heaton, as superintendent and principal, respectively, in the Stanly County School System, were sued in federal court by Michael Smith, a teacher, who alleged that his teaching contract had not been renewed because of his exercise of First Amendment rights.[1] At the time the federal

---

1. Michael Smith also alleged that his rights to due process of law under the Fourteenth Amendment were violated. Specifically, he alleged that his contract was not renewed because he objected to daily prayers, silent prayers and devotionals conducted by the principal, Heaton. He prayed for $750,000.00 as compensatory damages and $250,000.00 as punitive damages.

court suit was instituted by Smith, CNA had in force and effect its policy number BEL 318 1371, under which the Stanly County Board of Education and the individual plaintiffs, Martin and Heaton, were assureds. Horace Mann had in force and effect its policy number M-3008, insuring Heaton, and its policies Nos. M-3013 and M-4002, insuring Martin.

Unquestionably, each policy in controversy would have separately covered Smith's claim against Martin and Heaton were it not for the existence of the policy(ies) of the other insurer. The Horace Mann policies required it to defend any civil suit against Martin and Heaton arising out of their activities in a professional capacity, even if the suit were groundless, false or fraudulent. CNA's policy is one of indemnity. It does not contain the standard insuring agreement to furnish the assureds with a defense to an action as do liability policies. CNA's policy, however, does require it to reimburse the assureds for loss covered by the policy for which the assureds should become legally obligated to pay, and the definition of loss includes cost of defense of legal actions.

Horace Mann contends that its policies contain "excess insurance" clauses and only provide coverage in excess of the primary coverage provided by CNA. CNA contends that its policy contains an "other insurance" clause[2] and provides no coverage to Martin and Heaton since they had valid policies with Horace Mann. Because CNA denied coverage, Horace Mann undertook the defense of the federal case, and a settlement was eventually negotiated.[3]

The plaintiffs filed this action in state court asserting that CNA wrongfully denied coverage to Martin and Heaton and that the plaintiffs were entitled to recover from CNA $52,479.68 — the amount paid in settlement and defense of the federal court action.

2. CNA's "other insurance" clause is also known as an "escape" clause or "no liability" clause.

3. Under the terms of the settlement agreement, $23,850.00 was paid to Smith by or on behalf of Martin and Heaton. In addition, attorneys' fees for Martin and Heaton in the amount of $26,858.78 were paid, and Horace Mann Insurance Company incurred defense costs in an additional amount of $1,770.90. The payment of the settlement amount was structured in the form of a loan from Horace Mann to Martin and Heaton with Martin and Heaton issuing their personal checks to Smith and to Smith's attorneys.

CNA argues on appeal (1) that since there was no genuine issue as to any material fact, it, as opposed to Horace Mann, was entitled to summary judgment as a matter of law; (2) that if CNA's other insurance clause is not controlling, the clause at least cancels Horace Mann's excess clause and the loss should be prorated between the two companies; and (3) if Horace Mann is not liable on its policy, then it defended the action as a "mere volunteer" and is not entitled to maintain this action against CNA.

## II

[1] We must first decide which of the two policies is primary and which is excess. The relevant provisions in the CNA policy are contained in paragraph IV(b)(1) and follow:

IV. Exclusions

. . .

(b) The insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds

(1) which is insured by another valid policy or policies
. . . .

The relevant provisions in Horace Mann policies M-3008 and M-3013 are identical and are set forth in paragraph 6 in the following language:

If at time of loss there is other insurance available to the assured covering such loss or which would have covered such loss except for the existence of this insurance, then the Company shall not be liable for any amount other than the excess over any other valid and collectable insurance applicable to the loss hereunder.

Horace Mann's Policy No. M-4002 contains the same provision but states it in slightly different language:

In consideration of the nominal premium charged for this policy the Company shall not be liable for any amount other than the excess over any other valid and collectable insurance applicable to the loss hereunder.

In insurance parlance, the above quoted provision in the CNA policy is a standard escape or no-liability clause, while the provisions in the Horace Mann policies quoted above are excess insurance clauses. "A basic escape clause provides that there shall be no coverage where there is other valid and collectible insurance." 8A Appleman, Insurance Law and Practice § 4910 (1981). Thus, escape clauses do not except certain occurrences from coverage; rather, they provide conditional coverage. Stated differently, "if there is no applicable primary or excess coverage, then protection does exist under the policy containing the escape clause." *Id.* at § 4906. An excess clause, on the other hand, "generally provides that if other valid and collectible insurance covers the occurrence in question, the 'excess' policy will provide coverage only for liability above the maximum coverage of the primary policy or policies." *Id.* at § 4909.

The majority rule is that when a standard escape clause (no liability clause) competes with an excess insurance clause, the carrier using the escape clause is held to be the primary insurer, and the carrier that uses the excess insurance clause is held to be the excess insurer only. *Zurich General Accident Liability Ins. Co. v. Clamor*, 124 F. 2d 717 (7th Cir. 1941); *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds of London*, 34 Ill. 2d 424, 216 N.E. 2d 665 (1966). Our Supreme Court in *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436 (1967) [hereinafter *Allstate v. Shelby*] cited with approval the majority rule set forth in *Zurich* and followed in *New Amsterdam*. The rationale for the rule is that "the policy constituting excess insurance only [does] not provide other collectible coverage so far as the no-liability clause of the other policy [is] concerned." 16 Couch on Insurance 2d, § 62.76 (1966). *See also Allstate v. Shelby*; Annot. 46 A.L.R. 2d 1163 (1956).

The majority rule is not without its exception, however, and when a super escape clause competes with an excess insurance clause, the super escape clause is usually given effect. That is, when the escape clause expressly provides "that the insurance does not apply to any loss covered by other specified types of insurance, including the excess insurance type, it has been held that the insurer whose policy so provides is absolved from liability." 16 Couch on Insurance 2d, § 62.75. Our Supreme Court is one of

the courts that have so held, although it did not label the no liability clause a super escape clause. *Allstate v. Shelby*.

In *Allstate v. Shelby*, a prospective purchaser's automobile liability policy, which provided that the policy would be excess as to a non-owned automobile, competed with a garage liability policy, issued to a dealer who was permitting the prospective purchaser to test drive the dealer's car. The dealer's policy provided that a person operating with the insured's consent was covered only if no other valid and collectable insurance, "either primary or excess," was available. Our Supreme Court held that Allstate (the prospective purchaser's insurer) was liable because it issued excess coverage insurance and the garage policy "expressly [made] the existence of such 'excess' policy an event which" prevented the garage policy from operating at all with reference to the purchaser. 269 N.C. at 351, 152 S.E. 2d at 443.

The following general principles are set forth in *Allstate v. Shelby*:

1. Parties may contract as they please, and their contract will be enforced by the court as written;

2. Escape clauses and excess insurance clauses are not like provisions that are indistinguishable from each other so as to require the loss to be prorated between the carriers;

3. When the parties contract that coverage will be precluded by the existence of other insurance, the existence of a policy with an excess insurance clause is not such an event as will set into motion the exclusionary provision in the first policy;

4. However, when the other insurance escape clause is a super escape clause and expressly provides that coverage is precluded by the existence of excess coverage, the existence of a policy with an excess insurance clause *is* an event that sets in motion the provisions in the first policy.

As stated above, our Supreme Court is not alone in upholding super escape clauses. That an insurer can, in anticipation of the possibility that an insured may have excess coverage with another insurer, expressly contract against liability when the other insurance is either primary *or excess* has been upheld in other jurisdictions. *See, for example, Continental Cas. Co. v.*

*Weekes,* 74 So. 2d 367 (Fla. 1954); *Cook v. Strolle,* 39 Wisc. 2d 715, 159 N.W. 2d 686 (1968); and *Davis v. DeFrank,* 33 A.D. 2d 236, 306 N.Y.S. 2d 827, *aff'd* 27 N.Y. 2d 924, 318 N.Y.S. 2d 142, 266 N.E. 2d 822 (1970). *See also* Annot. 46 A.L.R. 2d 1163 (1956). Having cited with approval the majority rule announced in *Zurich,* our Supreme Court in *Allstate v. Shelby* applied the exception to this rule solely because the Shelby Mutual policy (garage liability policy) expressly stated that the existence of an excess policy was an event which precluded coverage by Shelby Mutual because it contained the phrase, "either primary or excess."

In the case before us, CNA's policy contains a standard escape clause (not a super escape clause) while the Horace Mann policies contain standard excess insurance clauses. Based on the reasoning of our Supreme Court in *Allstate v. Shelby,* we hold that CNA's policy provides primary coverage.

### III

[2] CNA also argues that (1) the duty of Horace Mann to afford the individual plaintiffs with a defense was not conditioned on its coverage being primary or excess; (2) that the individual plaintiffs incurred no cost in this action; and (3) that Horace Mann is not entitled to recover the defense cost from CNA because, if Horace Mann is not liable on its policies, then Horace Mann defended the action as a mere volunteer. On the basis of our Supreme Court's action in *Insurance Co. v. Insurance Co.,* 277 N.C. 216, 176 S.E. 2d 751 (1970) [hereinafter *Jamestown*], we summarily reject these arguments.

In the *Jamestown* case, the Court ruled that when the primary insurance carrier denies coverage and refuses to provide a defense to the insured, the excess insurance carrier may provide a defense and effect settlement and thereafter subrogate against the primary carrier to recover its expenses, at least when, as in this case, the injured party has not sued for an amount in excess of the primary coverage. The Court said that in such a situation, the excess carrier is not "such a pure volunteer as to be deprived of the right of subrogation," 277 N.C. at 222, 176 S.E. 2d at 756, because the excess carrier might be liable if the coverage question were resolved against it. The Court also observed that the primary carrier "should not be allowed to shift the burden of defense to its insured . . . or to [the excess carrier]

simply by denying coverage to [its assured]. To allow [the primary carrier] to do so would allow it to escape its obligations under its policy." 277 N.C. at 221, 176 S.E. 2d at 755.

CNA's policy did not require it to provide the individual plaintiffs with a defense, but rather obligated the individual plaintiffs to retain their own attorney and obligated CNA to reimburse the individual plaintiffs at a later date. The insuring provisions of CNA's policy (Paragraph 1(a)) provide that if a claim is made against the assureds for a "Wrongful Act," "the Insurer will pay on behalf of . . . the Assureds, . . . all loss which the said Assureds or any of them shall become legally obligated to pay." The term "loss" is defined in the policy to mean

> any amount which the Assureds are legally obligated to pay . . . for a claim or claims made against the Assureds for a Wrongful Act and shall include but not be limited to damages, judgments, *settlements and costs, cost of investigation and defense of legal actions*, . . . claims or proceedings and appeals therefrom. . . . [Emphasis added.]

CNA as the primary carrier cannot escape its liability under its policy.

On the authorities cited above, we

Affirm.

Chief Judge MORRIS and Judge ARNOLD concur.