746 P.2d 1109

**CC HOUSING CORPORATION and Continental Casualty Company, Plaintiffs–Appellants,**

v.

**RYDER TRUCK RENTAL, INC., Specialized Transport, Inc., and Old Republic Insurance Company, Defendants–Appellees.**

**No. 16774.**

Supreme Court of New Mexico.

Dec. 3, 1987.

Rodey, Dickason, Sloan, Akin & Robb, Mark Mowery, Santa Fe, for plaintiffs-appellants.

Ruud, Wells, & Mande, Russell W. Ruud, Deborah Mande, Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Justice.

CC Housing Corporation (CCH) owned a flat-bed trailer that was damaged in a traffic accident. CCH's trailer was attached at that time to a diesel tractor it had leased from its owner, Ryder Truck Rental, Inc. The rig was operated by a driver furnished to CCH under a contract with Specialized Transport, Inc. (SPX). Continental Casualty Company provided CCH's for insurance coverage, bodily injury and property damage. Both Ryder and SPX had similar insurance coverage with Old Republic Insurance Company. All parties agreed that the Continental and Old Republic policies covered CCH and its trailer at the time of the accident. Each insurance policy, however, contained "other insurance" clauses which attempted either to limit or eliminate its own liability by reason of the existence of the other policy.

Plaintiffs CCH and Continental sought a declaratory judgment against defendants Ryder, SPX, and Old Republic, claiming that Old Republic's policy afforded primary coverage and that Continental's excess coverage would not become available until the primary coverage had been exhausted. The defendants counterclaimed, asserting that both Old Republic and Continental supplied primary coverage on CCH's trailer and that liability should be prorated according to the respective limits of each policy. The plaintiffs moved for judgment on the pleadings; the defendants moved for summary judgment. The trial court granted summary judgment to defendants, declaring that each insurance policy contained "other insurance" clauses that were irreconcilable, conflicting, and mutually repugnant, and which should be disregarded. The insurers were ordered to share the loss by prorating the liability proportionate to

the total amount of coverage that each policy provided. Plaintiffs appeal; we affirm.

Plaintiffs argue here that Continental's insurance policy is an excess policy, not a primary policy with an excess clause. They say that because Continental's policy is not other valid and collectible insurance with respect to the Old Republic policy that affords primary coverage, benefits under Continental's excess policy do not become available until all other collectible insurance has been exhausted. Defendants claim, however, that both parties covered the tractor and trailer as a unit and that absent the "other insurance" clauses, both policies would provide primary coverage. They argue, therefore, that because no way exists to effectuate the intent of both clauses and still provide coverage, the clauses are mutually repugnant and liability should be divided on a pro rata basis.

The relevant portion of the Old Republic insurance contract provides:

It is agreed Endorsement # 7, Receipt Basis—Driverless Cars, is amended in part to read as follows:

3. The insurance coverage to such lessee/renter applies only to the maintenance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/renter or for which he is legally liable, but only while attached to the leased/rented automobile, [sic] however, such insurance *shall not* apply if there is other coverage applicable to the trailer and available to the lessee/renter. (Emphasis in original.)

This provision constitutes an "escape clause" because it denies all liability when the insured has other valid and collectible insurance. 8A J. Appleman, *Insurance Law and Practice* § 4910 at 457 (1981).

■ The applicable provision of the Continental Insurance policy reads:

B. OTHER INSURANCE.

1. For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle the liability coverage this policy provides for the trailer:

a. Is excess while it is connected to a motor vehicle you don't own.

b. Is primary while it is connected to a covered auto you own.

2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

Because CCH owned the trailer but leased the tractor, Continental's policy constitutes an excess policy with regard to the trailer. An excess policy limits the insurer's liability to the amount of the loss which exceeds the maximum coverage of other valid and collectible insurance. 8A Appleman § 4906, at 347.

■ When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties. *Davies v. Boyd*, 73 N.M. 85, 87–88, 385 P.2d 950, 951 (1963); *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct.App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977).

Defendants urge us to apply the minority Oregon Rule, or the *Lamb–Weston* doctrine, to the facts of this case. The Oregon Rule was established in *Oregon Automobile Insurance Co. v. United States Fidelity & Guaranty Co.*, 195 F.2d 958 (9th Cir.1952), when the Ninth Circuit Court of Appeals construed excess and escape provisions in two insurance policies as indistinguishable in meaning and intent. That court noted that if both clauses were given effect, both insurers would escape liability. It therefore regarded the clauses as mutually repugnant and prorated the liability between the insurers. *Id.* at 960.

The Oregon Supreme Court then adopted the rule in *Lamb–Weston, Inc. v. Oregon*

*Automobile Insurance Co.,* 219 Or. 110, 341 P.2d 110 (1959). Holding both insurers liable, the court reasoned that "whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto." *Id.* at 129, 341 P.2d at 119. Thus, when each competing policy contains a provision which attempts to limit or eliminate its coverage because other insurance exists, courts adopting the *Lamb–Weston* doctrine invalidate all "other insurance" clauses and prorate the liability between the insurers. *See, e.g., Werley v. United Serv. Auto. Ass'n,* 498 P.2d 112, 119 (Alaska 1972) (applying *Lamb–Weston* doctrine when "other insurance" clauses of excess, pro rata, or escape variety found); *Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 375, 565 P.2d 564, 568 (1977) (same); *Lamastus & Assoc., Inc. v. Gulf Ins. Co.,* 260 So.2d 83, 86 (La.Ct.App.) (adopting *Lamb–Weston* doctrine), *cert. denied,* 261 La. 1054, 262 So.2d 40 (1972); *Farm Bureau Mut. Ins. Co. v. Horace Mann Ins. Co.,* 131 Mich.App. 98, 104, 345 N.W.2d 655, 657 (1983) (same); *Arditi v. Massachusetts Bonding & Ins. Co.,* 315 S.W.2d 736, 743 (Mo.1958) (adopting Oregon Rule); *Sparling v. Allstate Ins. Co.,* 249 Or. 471, 476, 439 P.2d 616, 619 (1968) (applying *Lamb–Weston* doctrine).

We noted with approval but did not formally adopt the Oregon Rule in *American Employers' Insurance Co. v. Continental Casualty Co.,* 85 N.M. 346, 350, 512 P.2d 674, 678 (1973). We concluded there that two excess "other insurance" clauses were mutually repugnant because if the provisions were to have been applied literally, the insured would have had no coverage. In *Sloan v. Dairyland Insurance Co.,* 86 N.M. 65, 519 P.2d 301 (1974), Justice Stephenson recognized that *American Employers'* could have applied to hold two "other insurance" clauses mutually repugnant. *Id.* at 68, 519 P.2d at 304. In *Sloan,* however, "stacking" was the crucial issue, and the gist of the Court's holding there was that an insurance company might not avoid coverage for which it had contracted

and received premiums and, thus, stacking was permissible.

Professor Appleman has criticized the *Lamb–Weston* rule as an oversimplified way of arriving at an automatic result irrespective of factual, or legal, differences. 8A Appleman § 4906, at 344. We might agree that the criticism may be justified in some cases for, as Appleman notes, if the terms of each insurance policy are unambiguous and not in conflict, finding the escape and excess clauses mutually repugnant and therefore invalid is not warranted. 8A Appleman § 4910, at 477. Each policy, therefore, requires a critical examination to determine the nature and character of the coverage that each policy provides. *Continental Ins. Co. v. Insurance Co. of N. Am.,* 224 Tenn. 306, 312, 454 S.W.2d 709, 711 (1970). The critical analysis, however, should focus primarily on protecting the one for whose benefits premiums have been paid for insurance coverage, and construing the policies liberally in favor of the insured and strictly against the insurers. *Indiana Ins. Co. v. American Underwriters, Inc.,* 261 Ind. 401, 406–07, 304 N.E.2d 783, 787 (1973); *Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co.,* 175 N.W. 2d 413, 417 (Iowa 1970); *Graves v. Traders & Gen. Ins. Co.,* 200 So.2d 67, 77 (La.Ct. App.1967), *aff'd,* 252 La. 709, 214 So.2d 116 (1968); *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.,* 444 S.W.2d 583, 589 (Tex.1969).

■ When two identical "other insurance" clauses are involved, they negate one another because an "effort to test the reality of contractual intent, including the reasonable expectations of the assured in these cases, inexorably leads to that same detestable circuity of reasoning and dubiety of obligation. \* \* \* " *Continental Ins. Co.,* 224 Tenn. at 315, 454 S.W.2d at 713; *see American Home Assurance Co. v. Hartford Ins. Co.,* 74 A.D.2d 224, 228, 427 N.Y.S.2d 26, 29 (1980). If two or more "other insurance" clauses are of a nature that a court, to give effect to the intent of each clause simultaneously, must leave the insured with no coverage for which premiums have been paid, then the clauses are

mutually repugnant. We have held that two excess "other insurance" clauses, identical in meaning and intent, cancelled out one another and were mutually repugnant. *American Employers'*, 85 N.M. at 350, 512 P.2d at 678. If, however, two "other insurance" clauses, when read together, do not deny coverage to the insured, the clauses are not mutually repugnant, and the court will honor the language of each insurance policy. To apply the *Lamb–Weston* doctrine literally and thereby disregard all "other insurance" clauses without determining first whether the clauses together would deny coverage to the insured would indeed constitute the "Lazy–Way" approach in interpreting insurance contracts which Professor Appleman abjures. 8A Appleman § ˙4906, at 344.

■ After carefully scrutinizing the "other insurance" clauses of the two insurance policies in the present case, we can only conclude that the two clauses are mutually repugnant and irreconcilable. In an attempt to break the impasse created by two conflicting "other insurance" provisions, a line of cases has held that a policy with an "escape" clause affords primary coverage, and that a policy with an "excess" clause does not constitute other valid and collectible insurance and thus provides only secondary coverage. *See, e.g., Insurance Co. of N. Am. v. Continental Casualty Co.*, 575 F.2d 1070, 1074 (3d Cir.1978); *State Farm Mut. Auto. Ins. Co. v. Auto-Owners Ins. Co.*, 287 Ala. 477, 486, 252 So.2d 631, 640 (1971); *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London*, 34 Ill.2d 424, 430, 216 N.E.2d 665, 668–69 (1966); *Jensen v. Universal Underwriters Ins. Co.*, 208 Neb. 487, 492, 304 N.W.2d 51, 54 (1981); *Horace Mann Ins. Co. v. Continental Casualty Co.*, 54 N.C.App. 551, 557, 284 S.E.2d 211, 213–14 (1981). We are not impressed with cases which arbitrarily assign the order of priority of the competing policies. Those courts as easily could have held that the "excess" clause policy afforded primary coverage, and that the "escape" clause created secondary coverage or exempted that insurer from any liability. We therefore decline to follow the foregoing jurisdictions.

Likewise, we refuse to give effect to both policies as written because we can see that if we were to give literal effect to a reading of both "other insurance" clauses by reason of the labels attached to them, we would leave the insured without any coverage.

Finding no rational way to harmonize one clause with the other, and rejecting the primary-secondary solution of the cases cited above (which we view as a kind of Hobson's choice), we therefore invoke the *Lamb–Weston* doctrine.

It is abhorrent, as a matter of policy, to permit an insurance company to write into its policy, for which it has received premiums, a clause which exculpates itself from liability. *Branchal v. Safeco Ins. Co. of Am.*, 106 N.M. 70, 738 P.2d 1315 (1987); *Sloan*, 86 N.M. at 68, 519 P.2d at 304. Because a literal reading of the two clauses together would afford the insured no coverage, and because the intent of both policies was to extend coverage to the insured in consideration of the premiums paid, public policy dictates the equitable solution of holding both policies primarily liable and requiring proration of the loss in proportion to the respective limits of each policy. Accordingly, because the limits of each policy were the same, we affirm the decision of the trial court granting summary judgment in favor of defendants and equally allocating the liability between the insurers.

IT IS SO ORDERED.

SOSA, Senior Justice, and RANSOM, J., concur.

SCARBOROUGH, C.J., concurs in result only.

STOWERS, J., dissents.

STOWERS, Justice, dissenting.

I dissent.

Contract law, as the bedrock of the legal system, requires us to give effect to valid contracts whenever possible. Although it may be convenient, it is nevertheless inap-

propriate to adopt simplistic solutions to complex contract problems. The Oregon rule is such a simplistic solution insofar as it ignores the rights of the parties and the language of the contracts. Its application is inappropriate considering the facts of this case.

In the interest of clarification, I will set forth with particularity the facts and issues in this case.

CC Housing Corporation (CCH) maintained its liability insurance policy with Continental Casualty Company (Continental). The Continental policy contained an "Other Insurance" section in which primary coverage was extended only for any covered auto owned by CCH. For any covered auto not owned by CCH, the insurance provided by the policy was excess over any other collectible insurance. With respect to coverage afforded trailers specifically, the policy provided primary coverage while the trailer was connected to a covered auto owned by CCH and excess coverage while the trailer was connected to a motor vehicle which it did not own (the situation in the present case). This section also specified that if two or more policies afforded coverage on the same basis, either excess or primary, Continental would pay a pro rata share.

Ryder Truck Rental, Inc.'s (Ryder's) tractor was not owned by CCH, and because there was other collectible insurance for the tractor unit under the Old Republic Insurance Company (Old Republic) policy, I find Continental's policy afforded only excess coverage to the Ryder tractor. Further, since CCH's trailer was not connected to an automobile it owned at the time of the accident in question, I find CCH's trailer also was afforded only excess coverage.

Ryder Truck Rental, Inc. and Specialized Transport, Inc. were named insureds under a policy issued by Old Republic. CCH was an additional insured under the Old Republic policy by virtue of a special endorsement and a written agreement between CCH and Specialized Transport, Inc. Further, CCH was an insured under the Old Republic policy pursuant to the "Driverless Cars" special endorsement to the policy. Under the express terms of both special endorsements, therefore, CCH became an additional insured under the Old Republic policy during its use of the Ryder truck.

The Old Republic policy also contained an "Other Insurance" section stating: "The insurance afforded by this policy is primary insurance *except when stated to apply in excess of or contingent upon the absence of other insurance*" (emphasis added). The only additional section of the policy which related to the type of coverage afforded CCH and its trailer was the "Driverless Cars" special endorsement discussed above. Under the 1981 version of this endorsement, the insurance afforded under the policy to a lessee of an automobile using its own trailer was *excess* "over any other valid and collectible insurance the lessee/renter may have whether such coverage is on a primary, excess, or contingent basis." However, this 1981 "Driverless Cars" endorsement was not in effect at the time of the accident. Thus, the first exception to the primary coverage stated in the "Other Insurance" section of Old Republic's policy was not applicable. The second exception was also inapplicable because the policy did not contain a statement that Old Republic's primary coverage was *contingent upon* the absence of other insurance.

This "Other Insurance" section of Old Republic's policy further provided: "When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of [Old Republic's] liability under this policy shall not be reduced by the existence of such other insurance." Since Continental's policy afforded only excess insurance under the facts of this case, Old Republic should have been primarily liable to the limits of its policy as mandated by the clear terms of its "Other Insurance" section.

Finally, Old Republic's "Other Insurance" clause authorized a proration of policy limits only if the Old Republic policy and another insurance policy applied to the loss "on the same basis." Continental's policy applied to the loss in this case only on an excess basis. The Old Republic policy ap-

plied on a primary basis as stated by the policy's "Other Insurance" clause. Therefore, the two policies did not apply to the loss on the same basis, and a proration was inappropriate.

There is no necessity to analyze the two policies further; by simply comparing the express terms of Continental's "Other Insurance" policy clause with Old Republic's "Other Insurance" policy clause, it is clear that the Old Republic policy afforded primary coverage in this instance. The majority, however, fails to give effect to these "Other Insurance" clauses, choosing instead to compare Continental's "Other Insurance" clause with Old Republic's "escape" clause. It is only by comparing these latter two provisions that the majority can allege a repugnancy between the policy terms.

Notwithstanding the majority's erroneous analysis as discussed above, I nevertheless find that the Old Republic policy afforded primary coverage for the accident at issue by virtue of Old Republic's insertion of an "escape" clause into its policy.

"An 'escape' clause provides that the company invoking it is relieved from any obligation to the insured if other coverage is available." *Insurance Co. of N. Am. v. Continental Casualty Co.*, 575 F.2d 1070, 1072 (3d Cir.1978). While the 1981 "Driverless Car" endorsement contained only an excess clause, under the 1982 version, the version in effect on the date of the accident, the "excess" language from the 1981 endorsement was substituted with an escape clause. This new endorsement provided that the insurance afforded to a lessee and its trailer *"shall not* apply if there is other coverage applicable to the trailer and available to the lessee/renter." In other words, the 1982 endorsement purported to cancel or withdraw all coverage provided to CCH and its trailer in the event that CCH had other "applicable" and "available" coverage. There was no dispute between the parties that Old Republic's 1982 "Driverless Cars" endorsement did incorporate an escape type clause.

Although this is an issue of first impression in New Mexico, the clear majority rule

is that a policy like Old Republic's, containing language designed to avoid all liability, must fail when confronted by a policy containing a standard "excess" clause such as the one included in Continental's policy. As stated in *Horace Mann Ins. Co. v. Continental Casualty Co.*, 54 N.C.App. 551, 555, 284 S.E.2d 211, 213 (1981): "The majority rule is that when a standard escape clause (no liability clause) competes with an excess insurance clause, the carrier using the escape clause is held to be the primary insurer, and the carrier that uses the excess insurance clause is held to be the excess insurer only."

As discussed by the majority in their opinion, a minority of courts follow a rule of law that all "Other Insurance" clauses, whether pro rata, excess, or escape, are indistinguishable in meaning and intent and therefore mutually repugnant. *See, e.g., Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co.*, 195 F.2d 958 (9th Cir.1952); *Werley v. United Servs. Auto. Assoc.*, 498 P.2d 112 (Alaska 1972). Thus, in a case such as this involving a conflict between an excess clause and an escape clause, the minority rule (or Oregon rule) presumes that regardless of their natures the two clauses are identical. The result of this determination under the Oregon rule is that the "Other Insurance" clauses are disregarded and both policies are interpreted to afford primary coverage thereby requiring the insurers to share proportionately in the loss.

I am aware that two New Mexico cases refer to the Oregon rule with apparent approval. *See American Employers' Ins. Co. v. Continental Casualty Co.*, 85 N.M. 346, 512 P.2d 674 (1973); *Sloan v. Dairyland Ins. Co.*, 86 N.M. 65, 519 P.2d 301 (1974). However, I find them clearly distinguishable from the present case in that the conflicting insurance policies involved in both former cases contained excess clauses only; neither case involved a situation, such as the one at issue, where an excess clause confronted an escape clause. Consequently, although both cases discuss the principle that "Other Insurance" sections containing excess clauses are mutually repugnant and can be disregarded, neither case stands for the proposition that *all*

**584**

"Other Insurance" clauses are indistinguishable and hence invalid.

The district court in the present case relied upon the Oregon rule in denying Continental's motion for judgment on the pleadings and in granting Old Republic's motion for summary judgment. "Inasmuch as [Continental] is challenging a legal conclusion, the standard for review is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party. This means that we indulge all reasonable inferences in support of the court's decision, and disregard all inferences or evidence to the contrary." *Texas Nat'l Theatres, Inc. v. City of Albuquerque,* 97 N.M. 282, 287, 639 P.2d 569, 574 (1982). While "[r]esolution of factual conflicts, credibility and weight of evidence is particularly a matter within the province of the trier of fact," a reviewing court is not "bound by a trial court's ruling when predicated upon a mistake of law." *State v. Boeglin,* 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983) (citations omitted).

Although a split of authority exists on this issue, I find the majority rule the better reasoned view in that it gives effect to the language of the contract. "An insurance policy is a contract and is generally governed by the law of contracts, and the rights and duties of the parties are to be determined by its terms." *Thompson v. Occidental Life Ins. Co.,* 90 N.M. 620, 621, 567 P.2d 62, 63 (app.), *cert. denied,* 91 N.M. 4, 569 P.2d 414 (1977). When an insurance contract is unambiguous, no ambiguity should be placed on the language used by the parties and the language should be construed in its usual and ordinary sense. *See Safeco Ins. Co. of Am. v. McKenna,* 90 N.M. 516, 565 P.2d 1033 (1977).

The majority states that after "carefully scrutinizing the 'other insurance' clauses of the two insurance policies," it can only conclude that the provisions are "mutually repugnant and irreconcilable." The majority disregards the contract language. I believe the terms of the "Other Insurance" clauses clearly divided the liability between Continental and Old Republic. Moreover, I find the escape clause in Old Republic's policy clearly distinguishable from the ex-

cess clause in Continental's policy, and I would therefore adopt the majority rule which recognizes this distinction and gives effect to the plain and unambiguous language of the policy.

Finally, the majority makes much of the erroneous assumption that the insured in this case would have been left without any coverage if the Court had given effect to both "Other Insurance" policy clauses. While this certainly would have been an unjust result if it were true, the fact is that the insured would have been allowed full coverage under both insurance policies regardless of which rule of law was applied. Under the majority rule, the insured's damages would have been satisfied first by Old Republic to the extent of its policy limits, while the insured's remaining damages would have been satisfied by Continental to the extent of its policy limits. Under the minority rule, adopted by the majority opinion in this case, the insured's damages will be prorated equally between Continental and Old Republic to the extent of their total policy limits. Neither rule would have prejudiced the insured in any way. In my opinion, the majority's argument is not supported by the facts.

For all of the reasons stated above, I dissent.