## MOORE v. CINCINNATI INS. CO.

[147 N.C. App. 761 (2001)]

CHIQUITA B. MOORE, as Administratrix of the Estate of Jeffrey Moore, deceased, and OTIS EUGENE CHAPMAN, Plaintiffs v. THE CINCINNATI INSURANCE COMPANY, Defendant

No. COA00-1427

(Filed 18 December 2001)

### Insurance— garage owner's policy—coverage by driver's policy

The trial court erred in a declaratory judgment action by declaring defendant responsible for primary coverage in an action arising from an automobile collision involving a loaner vehicle where the garage owner's policy issued by defendant provided coverage if the customer had "no other available insurance" and the person to whom the vehicle was loaned and the driver at the time of the accident both had liability coverage.

Appeals by defendant/third-party plaintiff, The Cincinnati Insurance Company, and plaintiffs from judgment filed 24 April 2000 by Judge James U. Downs in Craven County Superior Court. Heard in the Court of Appeals 6 November 2001.

*Jones, Garland & Peterman, PLLC, by T. Russell Peterman, Jr. for plaintiff-appellants.*

*Barber & Wilson, P.A., by Andrew H.D. Wilson, for defendant/third-party plaintiff-appellant.*

*Wallace, Morris & Barwick, P.A., by P.C. Barwick, Jr., for defendant-appellee Atlantic Casualty Insurance Company.*

*Ennis, Newton & Baynard, P.A., by Stephen C. Baynard, for defendant-appellee Universal Insurance Company.*

GREENE, Judge.

The Cincinnati Insurance Company (Defendant) appeals an order (the Order) filed 24 April 2000 declaring Defendant to be responsible for providing primary liability coverage up to its policy limits and underinsured motorist coverage in the amount of $25,000.00 per person and $50,000.00 per accident to Chiquita B. Moore, as Administratrix of the Estate of Jeffrey Moore (Moore), deceased, and Otis Eugene Chapman (Chapman) (collectively, Plaintiffs); Plaintiffs also appeal the Order based on the amount of underinsured motorist coverage.

MOORE v. CINCINNATI INS. CO.

[147 N.C. App. 761 (2001)]

On 21 June 1995, Moore purchased a 1991 Subaru Loyale station wagon (the Subaru) from Alcoke Auto Center, LLC d/b/a New Bern Pontiac Mazda (Alcoke) in New Bern, North Carolina. Shortly after purchasing the Subaru, Moore began experiencing mechanical problems with the vehicle. These problems were caused by the vehicle having been previously wrecked, a fact unknown by Moore. On or about 6 September 1995, Alcoke agreed to repair the Subaru, with Alcoke and Moore equally bearing the costs of the repairs. While the Subaru was being repaired, Alcoke provided Moore with a loaner vehicle to drive (the loaner vehicle) that was covered under a garage liability insurance policy provided to Alcoke by Defendant.

On 11 September 1995, after several return visits to Alcoke, Moore returned to the dealership to see if the Subaru had been repaired. According to Chapman, after Moore informed Alcoke he would be making a trip to New York, an Alcoke representative "said it was all right . . . since they had [Moore's] car." On 11 September 1995, Moore, as the driver, along with Chapman and David Earl Sanders (Sanders), as passengers, drove the loaner vehicle to New York City. The three men left New York to return to New Bern on 12 September 1995 at approximately 4:30 p.m. At the time the men left New York, Moore was driving the loaner vehicle; sometime during the return trip to New Bern, however, Sanders began driving while Moore rested in the back seat of the loaner vehicle. At approximately 3:45 a.m. on 13 September 1995, the loaner vehicle collided with an "eighteen-wheeler tractor-trailer" at the intersection of US 70 Business and US 70 By-Pass in Johnston County, North Carolina. Moore and Sanders died as a result of the incident, and Chapman was seriously injured. The N.C. Highway Patrol investigated the incident scene and determined Sanders was solely at fault for causing the incident.

In a letter dated 19 December 1995, in response to a demand package sent by Plaintiffs, Defendant denied liability coverage for the collision stating the loaner vehicle "was to be driven in the New Bern area with [Moore] being the only driver. . . . The driver of the [loaner] vehicle at the time of the accident was [Sanders], an unauthorized driver."

On 26 January 1996, Plaintiffs filed a complaint against Defendant seeking a judgment declaring: the rights of the parties with respect to Defendant's policy of insurance covering the loaner vehicle; that Defendant provide Plaintiffs with compensation for the wrongful death and personal injuries arising out of the 13 September 1995 incident; the limits of automobile liability coverage provided by

MOORE v. CINCINNATI INS. CO.

[147 N.C. App. 761 (2001)]

Defendant; Defendant responsible for any judgment entered in civil actions arising out of the 13 September 1995 incident; and Defendant has a duty to defend the estate of Sanders and Alcoke as a result of the 13 September 1995 collision. Defendant answered and denied the allegations in Plaintiffs' complaint.

On 12 September 1997, with the leave of the trial court, Defendant filed a third-party complaint against Atlantic Casualty Insurance Company (Atlantic), Universal Insurance Company (Universal), Integon Indemnity Corporation, and Salem Underwriters, Inc.[1] Atlantic had issued an insurance policy to Sanders (Sanders' liability policy) with limits of liability in the amount of $25,000.00 per person and $50,000.00 per accident. Sanders' liability policy provided:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Universal had issued an insurance policy to Moore (Moore's liability policy) with limits of liability in the amount of $25,000.00 per person and $50,000.00 per accident. Moore's liability policy covered "[a]ny auto . . . not owned by [him] while used as a temporary substitute" for his vehicle if it was out of normal use due to: breakdown; repair; servicing; loss; or destruction. An "insured" under Moore's policy was anyone using his "covered auto." With respect to coverage for vehicles not owned by Moore, Moore's liability policy stated "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

At a bench trial held on 9 August 1999, Morris Randolph Hinton (Hinton), a field claims manager with Defendant, testified Alcoke was the named insured in a garage owner's liability policy provided by Defendant (Alcoke's policy). Under Alcoke's policy, an insured for a covered auto included:

> (2) Anyone . . . while using with your permission a covered "auto" you own, hire or borrow except:
>
>      . . . .

---

1. On 7 May 1999, Defendant dismissed the claims against Integon Indemnity Corporation and Salem Underwriters, Inc. without prejudice.

MOORE v. CINCINNATI INS. CO.

[147 N.C. App. 761 (2001)]

> (d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:
>
> > (i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.
> >
> > (ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limits of their other insurance.

In Hinton's opinion, Sanders was not an "insured" under Alcoke's policy because (1) Sanders was driving the loaner vehicle without the permission of Alcoke, and (2) Sanders was not a customer of Alcoke.

In an order filed 24 April 2000, the trial court declared, in pertinent part, that:

> (4) [Moore's liability policy] would . . . provide the primary excess coverage . . . upon exhaustion of the liability limits of the policy issued by [Defendant] . . . .[2]
>
> (5) [Sanders' liability policy] . . . will provide secondary excess liability coverage[.]

The dispositive issue is whether a garage owner's liability policy excluding coverage for customers having "other available insurance (whether primary, excess or contingent)" excludes a customer when his policy provides it "shall be excess over any other collectible insurance."

Where a garage owner's policy contains a provision that liability coverage for the garage owner's customer[3] is provided only if the customer "[h]as no other available insurance (whether primary, excess

---

2. The trial court thus implicitly declared Defendant provided primary liability coverage to Plaintiffs.

3. If the garage policy states that it provides coverage to a customer only if that customer is "using" the vehicle with the dealership/garage owner's "permission," no liability exists unless these tests are also satisfied.

**MOORE v. CINCINNATI INS. CO.**

[147 N.C. App. 761 (2001)]

or contingent),"[4] and the customer's liability policy provides it "shall be excess over any other collectible insurance," and it provides the minimum amount of liability insurance required by statute,[5] the garage owner's policy provides no liability coverage for the customer.[6] *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 351-52, 152 S.E.2d 436, 443-44 (1967); *United Services Auto. Ass'n v. Universal Underwriters Ins. Co*, 332 N.C. 333, 335-37, 420 S.E.2d 155, 156-58 (1992); *Eaves v. Universal Underwriters Group*, 107 N.C. App. 595, 600, 421 S.E.2d 191, 193, *disc. review denied*, 333 N.C. 167, 424 S.E.2d 908 (1992). If the customer's liability insurance is for an amount less than what is required by the Financial Responsibility Act, the garage policy containing an escape clause nonetheless provides coverage to the extent the statutory amount exceeds the customer's liability policy limits. *See Allstate*, 269 N.C. at 352, 152 S.E.2d at 444.

In this case, Alcoke's policy provided liability coverage only to those customers "using" the loaner vehicle with its "permission." Assuming without deciding that Sanders and/or Moore were Alcoke's customers and were "using" the loaner vehicle with Alcoke's permission, Defendant's garage policy provides no liability coverage for injuries sustained during Sanders' and/or Moore's use of the loaner vehicle. This is so because Alcoke's policy provided coverage if the customer had "no other available insurance." Sanders' and Moore's liability policies, however, provided the minimum amount of liability coverage as required by the Financial Responsibility Act and stated it would "be excess over any other collectible insurance." Accordingly, Alcoke's policy provided no liability coverage for the injuries sustained in the use of its loaner vehicle by either Moore or Sanders. The trial court must, therefore, be reversed.[7]

---

4. This type of insurance provision is commonly known as an escape clause. *Horace Mann Ins. Co. v. Continental Cas. Co.*, 54 N.C. App. 551, 555, 284 S.E.2d 211, 213 (1981).

5. The Financial Responsibility Act provides that for incidents occurring before 1 July 2000, the minimum amount of liability coverage required is $25,000.00 per person and $50,000.00 per incident. N.C.G.S. §§ 20-279.1(11); 20-279.21(b)(2) (2000) (for incidents occurring after 1 July 2000, the minimum amount of coverage is $30,000.00 per person and $60,000.00 per incident).

6. Plaintiffs contend this principle applies only to situations where the customer is test-driving a vehicle owned by a vehicle dealership/garage. We disagree and see no reason to limit the application of this principle to test-driven vehicles.

7. As we hold Defendant has no obligation to provide any liability coverage for injuries arising out of the 13 September 1995 incident, any error the trial court may have made in determining the amount of Defendant's liability under its underinsured motorist provisions is now moot. Accordingly, we do not address Plaintiffs' cross-appeal.

Reversed.

Judges McCULLOUGH and CAMPBELL concur.