## 51021. CITY OF JONESBORO v. CLAYTON COUNTY WATER AUTHORITY.

CLARK, Judge.

Through a declaratory judgment proceeding, the Clayton County Water Authority ("authority") sought direction from the superior court as to its right to increase rates chargeable to the City of Jonesboro ("city") under two thirty-year contracts. The earlier agreement dated September 9, 1963, was for the treatment of sewage. The second document dated April 11, 1966, was for providing water to the city.

The portions of the water contract pertinent to our decision are as follows: (1) Part one stated that "The term of this contract shall be for a period of thirty (30) years from the date hereof, and renewable for like period by the consent of both parties, either party having the right to cancel contract after the expiration of twenty-four months from date, and the party hereto desiring to effect such cancellation giving the other party hereto a sixty (60) day notice in writing of it's [sic] desire to do so."

(2) The second provision set forth the rate for the authority's service at $.30 per 1,000 gallons of water with a minimum monthly billing.

(3) Part three established the maximum amounts of water to be furnished the city. However, upon the city's request, the authority could increase this maximum if the revision was consistent with "the general welfare of the county and the economic welfare of the water system."

(4) Paragraph 4 forbade the city to supply water beyond the city limits and for the authority to supply water to individuals within the city.

(5) Part seven provided: "In executing this agreement, the city recognizes that the authority, in order to operate its transmission lines and distribution system elsewhere, will finance same by the issuance and sale of revenue anticipation certificates, and that the authority has covenanted to always maintain rates, fees and charges and to revise and adjust such rates, fees and charges as

may be necessary or proper so as to produce funds sufficient at all times to maintain and operate said system on a sound, businesslike basis, and to provide sufficient revenues for the payment of said certificates and the interest thereon, and to create reserves for that purpose. Rates contained herein shall be reviewed and are subject to adjustment by the authority at the end of each twelve (12) months from date."

The sixteenth paragraph of the sewerage contract is identical to the seventh provision of the water contract. Various other portions of the sewerage contract vary somewhat from the water contract, the major relevant differences being:

(1) There is no provision for cancellation of the sewerage contract during the thirty-year term.

(2) The sewerage agreement differs in the method of computing the rate to be charged in that the city is to pay $.75 per residential unit plus a percentage of the authority's operating costs.

(3) Paragraph 13 of the sewerage contract contains a provision that it "is based on the present geographical boundaries of the city." No similar passage appears in the water contract.

The instant controversy arose when the authority sought to revise its water and sewerage fees upward. The city contended that the contracts did not permit such revision except under the circumstances stated in paragraphs seven of the water contract and sixteen of the sewerage contract. Succinctly stated, the city claims that neither the water nor the sewerage rates may be revised unless the authority demonstrates that such revision is necessary to support its distribution and transmission lines and to honor the covenants in the revenue anticipation certificates. To the contrary, the authority argues that the contracts gave it the power to revise its rates as it saw fit, with no restrictions.

Furthermore, the authority insisted that even if the contracts did not confer this right, it possesses that power under the special Act which established the authority (Ga. L. 1955, pp. 3344 et seq.).

Finally, the authority contends that inasmuch as "One council may not by an ordinance bind itself or its

successors so as to prevent free legislation in matters of municipal government" (Code Ann. § 69-202), the contracts must be considered ultra vires and void.

The trial court sustained the authority's summary judgment motion. Its rulings can be summarized under the numbers used in the trial court's opinion as follows: (1) On the basis of the 1955 statute establishing the Clayton County Water Authority "the court rules as a matter of law that Clayton County Water Authority has the sole right to set the rates for the sale of water to the City of Jonesboro and to set the rates for the services charged to the City of Jonesboro for the treatment and transportation of sanitary sewage notwithstanding any contractual provisions as to rates that may exist in the contracts." (2) The authority had the power under the terms of Paragraph 1 of the water contract to terminate that particular contract by giving the city 60 days notice. (3) That the 1955 Act gave to the authority "the sole and exclusive right to set its schedule of fees, rates and tolls" and that the authority "has the absolute right to set such rates and the same are not the subject of 'negotiation' between the Clayton County Water Authority and the City of Jonesboro. The court is of the opinion that a negotiation of the rates would be a delegation of the legislative authority granted to Clayton County Water Authority and as such would be in contravention with the Act creating the Authority."

The city has taken this appeal from that judgment. Appellant's brief at pages 6 and 7 specifies that there are two questions at issue. These are: "(1) Under the terms of the water contract and under the terms of the sewerage contract, does the Clayton County Water Authority have the uncontrolled right to revise at any time the rates to be charged for services to be provided by each contract: (2) If not, does an upward revision of such rates depend upon the Authority being able to show such a revision is necessary under the standards set forth in paragraph 7 of the 1966 water contract and paragraph 16 of the 1963 sewerage contract?" As these two questions apply to paragraphs numbered 1 and 3 of the judgment entered below we do not undertake to pass upon that portion of the judgment numbered 2 dealing with the cancellation

rights given both parties by paragraph 1 of the water contract. *Held:*

1. "Utility districts ordinarily have [the] power to contract [under local statute] with the basic municipality for provision of services to the latter. Such contracts are governed by basic contract principles applicable to the contracts of private persons, except insofar as local statutes prescribe the method of entering into utility district contracts." 3A Antieau, Independent Local Government Entities, § 30J.07. We therefore apply ordinary contract rules of construction to determine the rights of the parties to the contracts under consideration.

The authority asserts that the last sentence of paragraph seven of the water contract and paragraph sixteen of the sewerage contract should be interpreted so as to give it the power to revise its rates at will. That sentence reads: "Rates contained herein shall be reviewed and are subject to adjustment by the Authority at the end of each twelve (12) months from date."

A cardinal contractual construction rule is to examine the document as a whole in order to ascertain the intention of the parties as to any one part. Code § 20-704 (4). In examining the disputed provisions of the contracts, and in relating those provisions to the contracts as a whole, we find that this interpretation as urged by the authority must fail. The last sentence which we have quoted in the preceding paragraph must be read in conjunction with the whole paragraph of which it is a part as well as with the contract as a whole. When thus read, it is observed that the authority was given the right to raise its contract rates if that became necessary to honor the obligations which were incurred through its revenue certificates or to operate the authority on a sound businesslike basis. This is so because the sentence in question adjoins and continues in the subject matter of the entire provision, and is not set apart from the subject matter as would be expected if it was unrelated to the other portion of the provision. Furthermore, the disputed sentence cannot be interpreted as the authority requests without being in total conflict with the other provisions of the contracts, such as the length of time for which the contracts were to be in force and the established rates for

service.

There is no provision of the contract whereby the city, having obligated itself to purchase services for thirty years, has agreed to indiscriminate and unrestricted rate increases. In giving the paragraph under consideration its most reasonable and consistent interpretation, we find that the authority may only raise its rates every twelve months from the date of either contract *if* it must do so "to produce funds sufficient at all times to maintain and operate said system on a sound, businesslike basis, and provide sufficient revenues for the payment of said certificates and the interest thereon, and to create reserves for that purpose. . ."

2. The authority contends that even if the contract be construed as argued by the city, it has the right to raise its contract rates by virtue of its enabling Act (Ga. L. 1955, pp. 3344 et seq.) and particularly sections 5, 6, and 9 of that Act.

Section 5 states that the board of the authority "shall regulate and provide for the use of its water, fix the time, place and rates for such usage. . ." Section 6 provides that the "board at all times shall maintain a schedule of fees, rates and tolls for the services of said water system as shall be sufficient to retire any revenue certificates, or other indebtedness. . ." Section 9 reads: ". . . all rights conferred to said board to construct, operate, and maintain a water system. . . shall likewise apply [to] the construction [,] operation and maintenance of a sewerage system for said county. . ." None of these statutory provisions empowers the authority arbitrarily or capriciously to revise rates and fees for services after it has contracted for specific rates. Undoubtedly, the contracting parties recognized this because they inserted in both contracts those paragraphs which state the basis on which the contractual rates could be revised.

In entering into the two contracts with the city the authority exercised its power to set rates under the statute which created it. It must comply with those contracts. Each of the agreements contained a paragraph in identical verbiage recognizing that the contractual rates were subject to annual revision. Such revision rights were undoubtedly placed in the contracts in anticipation

of changing conditions in Clayton County over a thirty-year period. Each contract provides that: ". . .to revise and adjust such rates, fees and charges as may be necessary or proper so as to produce funds sufficient at all times to maintain and operate said system on a sound, businesslike basis, and to provide sufficient revenues for the payments of said certificates and the interest thereon, and to create reserves for that purpose." Both contracts also stated the time when this could be done: "Rates contained herein shall be reviewed and are subject to adjustment by the Authority at the end of each twelve (12) months period." Undoubtedly, selection of twelve-months-periods was based upon the custom of businesses and governmental units to operate upon annual budgets.

3. The authority contends that even if it does not have the power to revise its contract rates, its contracts with the city are illegal in view of Code Ann. § 69-202 and the cases annotated thereunder. (See, e.g., *Horkan v. City of Moultrie*, 136 Ga. 561 (71 SE 785) which holds that the power of legislative bodies is limited so as not to deprive succeeding bodies of the right to deal with a particular question in the future.)

Code Ann. § 69-202 reads: "One council may not by an ordinance bind itself or its successors so as to prevent free legislation in matters of municipal government." This restriction also applies to contracts which limit a municipality's legislative or governmental powers. *Screws v. City of Atlanta*, 189 Ga. 839 (8 SE2d 16). Thus, the authority contends that its contracts with the city were ultra vires in that the authority unlawfully committed itself to the contract rates for the duration of the contracts.

In support of its contention, the authority relies on *Screws v. City of Atlanta*, supra. In that case, the City of Atlanta leased certain property for a period of twenty-five years with a provision requiring the city to supply the premises with water free of charge for the entire term of the contract. In voiding this agreement, our Supreme Court quoted Code Ann. § 69-202 and said: "What can not be done by an ordinance can not be done by a contract. The power of a municipality to fix and regulate water rates is a

legislative or governmental power [cit.], and falls within the limitation placed upon councils of municipalities by the Code, § 69-202." But in so holding, the court referred to Ga. L. 1924, p. 444, which authorized the city to lease the property for a period of twenty-five years, and stated: "While the Act provided that the terms and conditions of the lease should be left to the discretion of the mayor and general council, we do not construe this provision to mean that the city was thereby empowered to bind itself to terms, otherwise illegal and ultra vires, which were not to be necessarily implied from the authority granted. The authority to lease property does not necessarily imply the authority to supply the leased premises with water, and the agreement in the instant case is invalid *if the city was not otherwise authorized to make the same.*" Id., p. 843. (Emphasis supplied.) Thus had the City of Atlanta been authorized by the General Assembly to furnish the property with water the outcome of the case would have been different.

In the case at bar, the preamble to the statute which created the authority authorized that entity to "operate and maintain projects embracing sources of water supply and the distribution and sale of water and related facilities to individuals, private concerns, governmental agencies and municipalities . . . [and] to contract with others pertaining to the water utilities and facilities and to execute leases and do all things deemed necessary or convenient for the operation of such undertakings or projects. . ." The authority was empowered, therefore, to contract with the city for the sale of water and the treatment of the latter's sewage. And we cannot hold that the sale of water and related facilities to the city by the authority was an ultra vires act.

Furthermore, we do not regard Code Ann. § 69-202 as prohibiting authorities, as distinguished from municipalities, from entering long term contracts. A corporation may be designated as a municipal corporation for the purposes of one statute and not for another. McQuillin, Municipal Corporations, § 2.27a. Thus the fact that authorities were granted the same status as municipal corporations by the Revenue Bond Law (Code Ann. § 87-801 et seq.), does not mean that authorities

have "municipal dignity" for all legislative enactments. On the contrary, Code Ann. § 69-1601 provides: "Whenever the words 'city,' 'town' or 'municipality' appear in the statutory laws of Georgia, they shall be construed as synonymous and the General Assembly so declares this to be its intention in the use of these words, and such words shall be held to mean a municipal corporation as heretofore defined by statutory law and judicial interpretation." Thus there is no basis for the assertion that Code Ann. § 69-202 applies to authorities. See *Stegall v. Southwest Ga. Housing Authority,* 197 Ga. 571 (4) (30 SE2d 196), wherein it was held that an authority is not a municipal corporation, county or political subdivision so as to come within the meaning of Code Ann. § 2-5501 (§ 2-6001).

4. Nor does the Revenue Bond Law authorize the authority to revise its contract with the city. The Revenue Bond Law empowers a municipality to "prescribe, revise, and collect rates. . . for the services. . . furnished by such undertaking . . ." Code Ann. § 87-803 (c). The Act enlarged the scope of the term "municipality" to include both state and local public authorities and authorizes them to operate under the Revenue Bond Law just as municipalities are entitled to operate. Code Ann. § 87-802 (b). See *Johnston v. Clayton County Water Authority,* 222 Ga. 39 (148 SE2d 417).

Furthermore, in view of the fact that the Revenue Bond Law also authorized municipalities and public authorities "To make all contracts" (Code Ann. § 87-803 (e)) we cannot interpret this legislation as allowing changes in contracts excepting in accordance with the provisions contained in such agreements. Legally binding contracts must be honored.

5. Turning now to the judgment entered by the trial court and treating each portion according to its paragraph number, we conclude as follows:

(a) In paragraph 1 the trial court was correct in ruling that the authority shall ". . . 'at all times' maintain a schedule of fees, rates and tolls for the services of said water system and the services rendered to City of Jonesboro in providing sanitary sewerage, which, among other things, shall be sufficient to provide for any reserve

and funds required under any bond ordinances, and in addition thereto to provide such rates, tolls and charges which shall, in addition to the amounts required under such ordinances, be sufficient 'to pay the current operating cost of such system.' "

(b) We are also in agreement that the trial court was correct as to that portion of paragraph 1 wherein the court states that "Clayton County Water Authority has the sole right to set the rates for the sale of water to the City of Jonesboro and to set the rates for the service charged to the City of Jonesboro for the treatment and transportation of sanitary sewerage."

(c) We rule as erroneous the remaining portion of paragraph number 1 wherein the trial court rules that the provisions of the contracts were to be disregarded.

(d) We find error as to that portion of paragraph 3 which states that "The court is of the opinion that negotiation of the rates would be a delegation of the legislative authority granted to Clayton County Water Authority and as such would be in contravention of the Act creating the authority."

6. This court recognizes the importance of our decision to the citizens of Clayton County as well as to the bondholders. Since laymen are directly concerned we deem it fitting to state our conclusion in what Time Magazine (September 22, 1975, p. 74) describes as "the new legal-ese." They are:

(A) Clayton County Water Authority possesses the power to set and maintain a schedule of fees for water and sewerage services sufficient to honor the obligations upon its revenue certificates as well as to operate the authority on a sound, businesslike basis.

(B) The rates may be revised at any twelve-months contractual period.

(C) Any annual anniversary revision by the authority shall be in conformance with the standards stated in paragraph 16 of the 1963 sewerage contract and in paragraph 7 of the 1966 water contract.

(D) The authority is not required to negotiate with the City of Jonesboro. Nevertheless, it must be recognized that the city has the right to contest in the courts any revision on the basis that the revisions do not conform to

paragraph 16 of the 1963 sewerage contract and paragraph 7 of the 1966 water contract.

*Judgment affirmed in part and reversed in part. Pannell, P. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 3, 1975 — DECIDED NOVEMBER 4, 1975 — REHEARING DENIED NOVEMBER 26, 1975.

*Albert B. Wallace, William R. L. Latson,* for appellant.

*Oliver & Duckworth, G. Robert Oliver,* for appellee.