71660. ZEPP et al. v. MAYOR & COUNCIL OF ATHENS.
(348 SE2d 673)

McMURRAY, Presiding Judge.

Plaintiffs Richard G. Zepp, Calvin C. Seaquist, William R. Walinow, Jr., and J. David Carter, brought this class action lawsuit in Clarke County Superior Court against the Mayor and Council of the City of Athens, Georgia. In their complaint, plaintiffs allege that they purchase water from the City of Athens "through meters located outside the City Limits of the City of Athens, but inside Clarke County, Georgia"; that the City of Athens is a municipal corporation which "operates its water system as a proprietary venture for economic gain"; and, that the water rates which the City of Athens charges the plaintiffs are "2.25 times the rates charged persons who purchase water inside the city limits of the City of Athens." Based upon the foregoing allegations, plaintiffs set forth three causes of action. First, plaintiffs contend that the rates which the City of Athens charges are "arbitrary and capricious" and deprive plaintiffs of their property without due process of law. Second, plaintiffs assert that the "contract between each of the Plaintiffs and the City of Athens is a contract with an open price term for the sale of goods" and that the rates which the City fixes for the "goods [are] unreasonable and in excess of that normally charged in the market place . . ." Finally, plaintiffs allege that the rates are charged under a "contract of adhesion for which the Plaintiffs have no practical alternative" and that

they are unconscionable. In their "wherefore" clause, plaintiffs seek, inter alia, "reimbursement for excessive charges imposed" by the city, "an injunction against the imposition of such rates," and an order requiring the city "to submit a new schedule of rates. . . ."

The City of Athens answered the complaint and denied the material allegations set forth therein. Additionally, the city defended on the grounds, inter alia, that the complaint failed to state a claim upon which relief could be granted. See OCGA § 9-11-12 (b) (6). The parties agreed to treat the OCGA § 9-11-12 (b) (6) defense as a motion to dismiss and the trial court was so notified. Thereupon, the trial court informed counsel for the parties that it intended to handle the city's motion to dismiss as a motion for summary judgment.

Plaintiffs objected to the treatment of the motion to dismiss as a motion for summary judgment. They argued that it was improper to so treat the motion since neither party presented matters dehors the pleadings. Plaintiffs also contended they were not afforded sufficient time to submit material in opposition to a summary judgment motion. The trial court responded to plaintiffs' objection by granting plaintiffs additional time (from March 6, 1985, until April 24, 1985) to file documents opposing the summary judgment motion. Thereafter, plaintiffs filed documents in opposition to the motion "under protest." These included certified copies of the water rates charged by the cities of Savannah and Brunswick, the affidavit of John B. Gillett, a partner in an engineering firm, and the affidavit of plaintiffs' counsel.

The water rate table for the City of Savannah shows that non-residents are charged approximately 1.5 times the rates charged persons who purchase water inside the city limits. Likewise, the City of Brunswick water rate table shows that non-residents are charged approximately 1.5 times as much as residents for the purchase of water.

In his affidavit, Mr. Gillett averred that his firm was retained by the city in 1980 to evaluate two reports which provided the basis for the city's water rate structure; and that based on data from one of those reports and cost estimates from the city's 1980 budget, it was "estimated that the City's water revenues for 1980 were 47% higher than cost on a system-wide basis." Gillett further averred that his firm was retained by Clarke County in 1984 to conduct a cost of service study of the city's water and sewer system; that "that study will include our assessment of the cost of water service outside the City of Athens in Clarke County, Georgia"; that that study was to have been completed in the summer of 1984 but its completion was "delayed because the City has refused to provide a part of the needed data" in view of pending litigation; but that, nonetheless, the cost-of-service study was scheduled to be completed April 30, 1985.

The affidavit of plaintiffs' counsel was filed pursuant to OCGA § 9-11-56 (f) on April 23, 1985. He averred, inter alia, that it was not

possible to adequately present evidence in opposition to the summary judgment motion within the time allowed by the court. Specifically, plaintiffs' counsel averred that the cost-of-service study which is being prepared by Mr. Gillett's engineering firm had not been completed; that the cost-of-service study was "essential" to plaintiffs' case; and that in the absence of the cost-of-service study, expert testimony supporting plaintiffs' contentions could not be obtained.

By stipulation, various other documents were submitted in opposition to the city's summary judgment motion. These included a copy of the city's municipal water rate (showing that non-residents are charged about 2.25 times as much as residents for the purchase of water) ordinance, a summary of revenues and expenses for the city's water system for the ten-year period commencing in 1973 and ending in 1982, the city's financial statements for the year ending June 30, 1984, and the city's 1984 prospectus with respect to the sale of $18,941,755 in re-financing bonds.

A hearing was held upon the summary judgment motion on April 24, 1985. Thereafter, on July 26, 1985, the trial court awarded summary judgment to the city and plaintiffs appeal.

In *Zepp v. Mayor &c. of Athens*, 255 Ga. 449 (339 SE2d 576), the Supreme Court ruled that jurisdiction of this case lies in the Court of Appeals since plaintiffs' attack upon the constitutionality of the water ordinance was "resolved adversely to the plaintiffs" in decisions rendered previously by the Supreme Court. Accordingly, the Supreme Court transferred the case to this court. *Held*:

1. Plaintiffs contend the trial court erred by treating the city's motion to dismiss as a motion for summary judgment. They argue that an OCGA § 9-11-12 (b) (6) motion should only be converted into a summary judgment motion where matters beyond the pleadings are presented to the court by the parties. We disagree. So long as the parties are afforded sufficient time within which to file affidavits and other evidentiary materials, we see no reason why a trial court sua sponte cannot treat an OCGA § 9-11-12 (b) (6) motion as one for summary judgment even though neither party introduced matter outside of the pleadings. See *Scott v. Dollahite*, 54 FRD 430, 432 (ND Miss. 1972).

2. Plaintiffs assert the trial court erred in awarding summary judgment to the city for three reasons. First, they argue that the water rate structure set forth by the city is unconstitutional. Second, they contend the contract between plaintiffs and the city for the purchase of water contains an open-price term which the city fixes unreasonably in violation of OCGA § 11-2-305. Third, they assert that the rates charged by the city are unconscionable in violation of OCGA § 11-2-302.

Plaintiffs' first argument must fail in light of the decision of the

Supreme Court transferring the case here. In Division 1 of *Zepp v. Mayor &c. of Athens*, 255 Ga. 449, supra, the Supreme Court made it clear that plaintiffs' contention of unconstitutionality was resolved adversely to plaintiffs in prior decisions of the Supreme Court. Thus, it cannot be said that the water-rate ordinance promulgated by the city is unconstitutional.

In the case sub judice, we find no express contract between the city and plaintiffs for the sale of water. Rather, there is a continuing offer by the city to sell water; and an acceptance by plaintiffs of the offer "by the act of drawing water through the water meter." *Moody v. City of Galveston*, 524 SW2d 583, 586 (Ct. Civ. App. Tex. 1975). The city seemingly asserts that this implied contract for the sale of water cannot be reviewed because the city has an absolute right to charge different water rates to its resident and non-resident customers. We agree that the city has a right to impose different water rates for its resident and non-resident customers. *Zepp v. Mayor &c. of Athens*, 255 Ga. 449, supra. But this is not to say that the actual rate imposed is not subject to review. Where a city sells water to a customer pursuant to a voluntary contract, that contract is subject to review by the courts in the same manner as any other private contract. *Moultrie v. Burgess*, 212 Ga. 22, 24 (3) (90 SE2d 1). Thus, such contracts are governed by contract principles applicable generally to the contracts of private parties. See *Jonesboro v. Clayton County Water Auth.*, 136 Ga. App. 768, 771 (222 SE2d 76).

Plaintiffs' second and third contentions, attacking the fixing of the water rate as unreasonable and unconscionable, are predicated upon the applicability of the Uniform Commercial Code ("UCC") to the water contracts. Thus, before directly addressing these contentions, we must first determine whether the sale of water by the city constitutes the sale of goods under Article 2 of the UCC.

Our analysis of this question begins with the pre-UCC case of *Canavan v. Mechanicville*, 128 NE 882 (229 N.Y. 473) (1920). In that case, the New York Court of Appeals examined the sale of water in light of the Uniform Sales Act. Under that Act, goods were defined in part as "all chattels personal other than things in action and money." In rendering its decision upon the question presented the New York court stated: "The furnishing of water, through a system of waterworks, by a water corporation, either private or municipal, to private consumers, at a fixed compensation, is a sale of goods within the meaning of the statute. That the furnishing is without profit to the corporation is weightless. The corporation segregates the water supplied from its sources in reservoirs or pipes of its own and delivers it to those who demand and receive it at a fixed compensation or price. It is a sale of goods as fully as if the water were collected and delivered in bottles for a price. [Cits.]" Id. at 883. Thus, that court held

that the furnishing of water was a sale of goods under the Uniform Sales Act.

Under the UCC, the term "goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8 of this title), and things in action." OCGA § 11-2-105 (1). Generally, the term " 'goods' has a very extensive meaning and embraces every species of property which is not real estate, choses in action, or investment securities or the like." *Duffee v. Judson*, 380 A2d 843, 846 (Pa. Super. 1977). "In essence the definition is that goods means all things which are movable at the time of identification to the contract for sale." *Moody v. City of Galveston*, 524 SW2d 583, 586, supra.

Very few courts have considered whether the furnishing of water is a sale of goods under the Uniform Commercial Code. See in this connection Annot., Electricity, gas, or water furnished by public utility as "goods" within provisions of Uniform Commercial Code, Article 2 on sales, 48 ALR3d 1060 (1973). Our examination of the case law in this field shows two conflicting viewpoints.

One such viewpoint, expressed in *Coast Laundry v. Lincoln City*, 497 P2d 1224 (Or. App. 1972), is that the sale and supply of water by a municipality is not subject to the UCC. In the *Coast Laundry* case, that court examined *Canavan v. Mechanicville*, supra, in light of the Uniform Commercial Code. That court observed that the Official Comment to the Uniform Commercial Code sets forth the difference between the Uniform Sales Act and the UCC with respect to the concept of "goods." In pertinent part, the Comment reads: "The definition of goods is based on the concept of movability and the term 'chattels personal' is not used. It is not intended to deal with things which are not fairly identifiable as movables before the contract is performed." Official Comment, 1 Uniform Laws Annotated, § 2-105, p. 125 (1976). A/pparently determining that water is not "fairly identifiable as a movable before the contract is performed," the *Coast Laundry* court reached the conclusion that the sale of water does not constitute the sale of goods. In effect, the *Coast Laundry* court took the position that *Canavan v. Mechanicville*, supra, is inapplicable under the UCC's definition of goods.

We think water *is* "fairly identifiable" as a movable (i.e., something that can be moved) "before the contract is performed." Accordingly, we do not find the conclusion reached in *Coast Laundry v. Lincoln City*, supra, compelling. Rather, we are persuaded by the viewpoint set forth in *Helvey v. Wabash County REMC*, 278 NE2d 608 (Ct. App. Ind. 1972), and reach the conclusion that the sale of water does constitute the sale of goods.

In *Helvey*, that court held that electricity can be sold as "goods"

within the framework of the UCC. In so holding, the court observed that under the UCC, "It is necessary for goods to be (1) a thing; (2) existing; and (3) movable, with (2) and (3) existing simultaneously." It concluded that "electricity qualifies in each respect." Id. at 610.

We can see no appreciable difference between the sale of water and the sale of electricity when it comes to determining whether the sale of either commodity is a sale of goods. Water, like electricity, is a thing; it exists; it is "fairly identifiable" as a movable at the time of identification to the contract of sale. (In fact, we think water is even more identifiable as a movable than electricity.) In this regard we adopt the reasoning of the *Helvey v. Wabash County REMC*, supra, court: "Logic would indicate that whatever can be measured in order to establish the price to be paid would be indicative of fulfilling both the existing and movable requirements of goods." Id. at 610.

In sum, we think the conclusion reached by the New York Court of Appeals in *Canavan v. Mechanicville*, supra, is as applicable under the UCC as it was when rendered: The sale of water is the sale of goods whether delivery is made through a waterworks system or in bottles. Hence, we conclude that the sale of water by a municipality is the sale of goods and a transaction which is governed by Article 2 of the UCC. We turn now to a consideration of plaintiffs' second and third contentions.

Relying upon OCGA § 11-2-305 (2) plaintiffs contend a factual question exists as to whether the city fixes the price of water "in good faith." We cannot agree with this contention. OCGA § 11-2-305 only comes into play where a contract for sale is concluded with an open-price term. In the case sub judice, the water is offered for sale by the city at a fixed price; plaintiffs accept the offer at that fixed price. Accordingly, it cannot be said that the city sells water to plaintiffs pursuant to an open price term contract.

"While it is a general rule in this state that parties may contract as they please subject to the exceptions of Code § 20-501 et seq. [OCGA § 13-8-1], Code § 109A-2—302 (1) [OCGA § 11-2-302 (1)] modifies this general rule that parties are free to make whatever contracts they please so long as there is no fraud or illegality by giving the courts discretion to refuse to enforce sales contracts under the Georgia Uniform Commercial Code, in whole or in part, which they find to be 'unconscionable.' *Frostifresh Corp. v. Reynoso*, 52 Misc.2d 26 (274 NYS2d 757)." *Chrysler Corp. v. Wilson Plumbing*, 132 Ga. App. 435, 440 (208 SE2d 321).

Excessively high prices may constitute an unconscionable provision of a contract under OCGA § 11-2-302 (1). *Central Budget Corp. v. Sanchez*, 279 NYS2d 391, 392 (53 Misc.2d 620) (1967). Plaintiffs contend the sale of water by the city to non-residents at a price 2.25 times higher than the rates charged to residents is unconscionable as

a matter of law.

" 'The basic test [of "unconscionability" within the meaning of OCGA § 11-2-302] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.' [Cit.]" *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 965 (3) (214 SE2d 360) (1975). Moreover, that which the law itself specifically permits cannot be "unconscionable." *Avery v. Aladdin Prods.*, 128 Ga. App. 266, 267 (2) (196 SE2d 357) (1973). The so-called "contract" in the instant case is not one-sided and is specifically authorized by law.

Ga. L. 1979, pp. 3770, 3806 specifically provides: "The mayor and council [of the City of Athens], by ordinance, shall have the authority *to assess* and collect fees, charges, and tolls for water . . . services rendered within and without the corporate limits of the city." (Emphasis supplied.) The City of Athens has made its water available to nonresidents and has assessed a fee to be charged to those who chose to avail themselves of it. Those nonresidents are free to decline the service and entirely avoid the assessed fee. " 'A municipal corporation may not compel any person outside its territorial limits to accept water service which it undertakes to furnish, nor may the municipal authorities be compelled to render such service. A municipal corporation may classify rates to be charged in outlying territories, and upon failure of customers to pay such charges, the municipal corporation may discontinue its service.' [Cits.]" *City of Moultrie v. Burgess*, 212 Ga. 22, 24, supra. Thus, if plaintiffs decline to pay the assessed charge, they are certainly in no worse position then if the City of Athens had not undertaken to make its water available to non-residents. In either event, plaintiffs are simply without a source of water from which they otherwise have no right to supply themselves. "The plaintiffs, having no right to demand water service from the city, may purchase it at the city's charge therefor, or they may decline to do so, at their will, but they are in no position which authorizes them to complain of an excessive charge or a discriminating rate." *City of Moultrie v. Burgess*, supra at 24 (4). Plaintiffs, having no enforceable right to be supplied with water from the City of Athens at any price, should not be allowed to assert that it is "unconscionable" that they are not being supplied with water for a fee that is less than that assessed by the authorities legally authorized to determine the rate to be charged. The General Assembly has given the Mayor and City Council of the City of Athens the unrestricted authority to set the fees for water service supplied to non-residents who choose to receive it. If plaintiffs and those similarly situated believe that the fees they are asked to pay for the benefit of the city's water are too high, their

recourse is of an economic and political nature. The courts of this State should not become regulatory agencies for municipal utility systems. When properly at issue, "unconscionability" is a question of law for the court. However, on the record in the case sub judice, there is, as a matter of law, no such issue. The trial court did not err in granting summary judgment to the city.

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED JULY 16, 1986 —
REHEARING DENIED JULY 31, 1986 

*Sidney L. Moore, Jr.*, for appellants.
*Dennis Galis, Robert Langstaff*, for appellee.