775 P.2d 722

**Mary Ana RAMIREZ–EAMES, Plaintiff-Counterdefendant-Appellee,**

v.

**Wade H. HOVER, Defendant–Counterclaimant–Appellant.**

**No. 18007.**

Supreme Court of New Mexico.

June 22, 1989.

Wade H. Hover, Los Gatos, Cal., pro se.

Winston Roberts–Hohl, Santa Fe, for plaintiff-counterdefendant-appellee.

## OPINION

RANSOM, Justice.

Wade H. Hover, an attorney and lessor of a Santa Fe apartment, appeals pro se from judgment by the district court on a claim brought by Mary Ana Ramirez–Eames to recover the security deposit she paid Hover under a lease agreement entered into on August 8, 1987. The lease was to run from October 1, 1987, to Sep-

tember 30, 1988. Ramirez–Eames agreed to pay $850 per month in rent plus an $800 security deposit. According to her complaint, Ramirez–Eames contacted Hover on August 30, 1987, to inform him that she no longer was willing to occupy the apartment under the terms of the lease and to seek return of her $800 security deposit. She did offer to pay the $531.41 leasing agent fee charged pursuant to their lease. Hover persuaded the tenant then occupying the premises to renew his lease for the period covered by the lease with Ramirez–Eames, at $725 per month rent. With Ramirez–Eames he took the position that, in addition to the leasing agent fee, she owed him the $125 per month difference between the rent she had contracted to pay and the rent he had agreed upon with the tenant in occupancy. Ramirez–Eames filed suit in magistrate court to recover her deposit and Hover counterclaimed for breach of contract. The case was transfered to district court.

At trial, Ramirez–Eames argued her notice to Hover that she no longer intended to occupy the property constituted proper notice of rescission. Moreover, she contended, the fair market value of the apartment was $725 per month rent, not $850, and in equity she should not be forced to pay the difference. Ramirez–Eames concluded that she should have judgment for the difference between her security deposit and the leasing fee, or $268.59. Hover contended the parties had entered into a valid, binding contract and Ramirez–Eames had repudiated that contract in an anticipatory breach. He sought recovery of the $531.41 leasing fee, plus $1,500 for loss of the benefit of the bargain, minus an $800 credit for the security deposit paid by Ramirez–Eames, or $1,231.41.

The court found Ramirez–Eames had "repudiated" a valid lease contract prior to its commencement date, and also prior to the commencement date Hover had rented the apartment for $725 per month. The court further found the fair market value of the subject rental to be $725 per month, not $850. Based on these findings, the court concluded that *in equity* Ramirez–

Eames should not be forced to pay $850 per month. Since the apartment in question was occupied at fair market value throughout the duration of the Ramirez–Eames lease, the court decided the only cost that should be borne by Ramirez–Eames was the leasing fee. The balance of the security deposit the court ordered returned to her.

■ On appeal, Hover argues the court cannot find the parties entered into a valid contract, enforceable at law, find this contract was repudiated by Ramirez–Eames, and then proceed to apply principles of equity to relieve Ramirez–Eames of her responsibilities under the contract. It is axiomatic under the common law that courts will not undertake to rewrite the parties' agreement. *CC Housing Corp. v. Ryder Truck Rentals, Inc.,* 106 N.M. 577, 746 P.2d 1109 (1987). Absent unusual circumstances such as fraud or material misrepresentation, *see Ledbetter v. Webb,* 103 N.M. 597, 711 P.2d 874 (1985), duress, *see Pecos Const. Co. v. Mortgage Inv. Co. of El Paso,* 80 N.M. 680, 459 P.2d 842 (1969), or unconscionability, *see Huckins v. Ritter,* 99 N.M. 560, 661 P.2d 52 (1983), a valid contract will be enforced, notwithstanding allegations that one party has received the better part of the bargain.

■ In her response to Hover's motion to reconsider the judgment, Ramirez–Eames referred the trial court to *Huckins,* arguing the lease under consideration here, like the lease in *Huckins,* was unconscionable. We disagree. In *Huckins,* pursuant to a contract to purchase real estate, the defendants had tendered $45,000 in downpayment. At the time they defaulted, they had only occupied the premises for eight months. This court refused to allow enforcement of the provision calling for forfeiture of the money paid on the contract upon default, because the amount of money paid bore no relationship to the value bestowed by the plaintiffs. Here, the difference between the contract price and what the court found to be the fair market value of the rental does not remotely approach the magnitude or proportion of the difference considered in *Huckins.* While this

difference may indicate overreaching, it is not an unconscionable difference.

However, in New Mexico, the common law in the area of rental agreements has been modified to some extent by the Uniform Owner–Resident Relations Act, NMSA 1978, Sections 47–8–1 to 47–8–51 ((Repl.Pamp.1982). Section 47–8–4 provides that common law principles of law and equity supplement the provisions of the Act, except insofar as displaced by its other provisions. Section 47–8–12, entitled the "Inequitable agreement provision," states:

A. If the court, as a matter of law, finds that any provision of a rental agreement was inequitable when made, the court may limit the application of such inequitable provisions to avoid an inequitable result.

B. If inequitability is put into issue by a party to the rental agreement, the parties to the rental agreement shall be afforded a reasonable opportunity to present evidence as to the setting, purpose and effect of the rental agreement, or settlement, to aid the court in making a determination.

■ A plain reading of this statute suggests it modifies the common law principles discussed above, by allowing the court to make a determination of the underlying fairness of the rental agreement when made and allowing selective enforcement of the contract to bring about an equitable result. We note that this section is in most respects modeled after a comparable section of the Uniform Residential Landlord and Tenant Act drafted and approved by the Conference of Commissioners on Uniform State Laws in 1972. *See* Survey of Developments, *The Uniform Owner–Resident Relations Act,* 6 N.M.L.Rev. 293, 300 (1976). However, in the comparable provision of the model act, the term "unconscionable" is used rather than "inequitable." *Id.; see* Uniform Residential Landlord and Tenant Act § 1.303 (1972).

■ The unconscionability provision adopted by the Commissioners on Uniform State Laws, which the New Mexico legislature modified in adopting the inequity pro-

vision of our Uniform Owner–Resident Relations Act, is itself modeled after Section 2–302 of the Uniform Commercial Code (NMSA 1978, Section 55–2–302). As in Section 2–302, the determination of unconscionability under the model act is described as a matter of law; accordingly, the court in *Osgood v. Medical, Inc.*, 415 N.W.2d 896 (Minn.Ct.App.1988), held this determination should be made de novo on review. We disagree. The history of the UCC's unconscionability provision demonstrates that the intent of this language simply was to reserve the question of unconscionability for the trial court rather than the jury. *See* D. Price, *The Conscience of Judge and Jury: Statutory Unconscionability as a Mixed Question of Law and Fact,* 54 Temp.L.Q. 743, 749–52 (1981).

Because the decision of unconscionability depends ultimately on the facts of each case, we do not believe the drafters of the UCC intended, in labeling the question to be one of law, to compel a reviewing court to disregard a trial court's evaluation of the facts, if based on substantial evidence, and proceed to reweigh these facts on the basis of the appellate record. Similarly, we do not believe appellate courts should be de novo courts of equity in landlord-tenant disputes. We believe this principle was served in *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 186 Cal.Rptr. 114 (1982) (construing UCC Section 2–302), when the court wrote:

> The business conditions under which [a] contract was formed directly affect the parties' relative bargaining power, reasonable expectations, and the commercial reasonableness of risk allocation as provided in the written agreement. To the extent there are conflicts in the evidence or in the factual inferences which may be drawn therefrom, we must assume a set of facts consistent with the court's finding of unconscionability if such an assumption is supported by substantial evidence.

*Id.* at 490, 186 Cal.Rptr. at 123–24.

■ Given that New Mexico has adopted a standard of inequity in place of a standard of unconscionability, we conclude the considerations to which we have alluded are even more compelling, since the determination of the equities in a given case historically has been left to the discretion of the trial court. *See Wolf and Klar Cos. v. Garner,* 101 N.M. 116, 679 P.2d 258 (1984). The trial court finds substantive unfairness through a process of evaluating whether the risks and benefits of the bargain have been allocated in an objectively unreasonable fashion.[1] This evaluation of reasonableness in the allocation is tied to procedural aspects of unconscionability (e.g., oppression or surprise); the greater the procedural deficits in the bargaining process, the less substantive unfairness will be tolerated. *See A & M Produce,* 135 Cal.App.3d at 488, 186 Cal.Rptr. at 122. Such considerations are seldom the stuff of which purely legal issues are made.

■ Here, evidence was presented that Ramirez–Eames had only one day in which to find an apartment and agreed to pay the $850 per month under these circumstances, that at the time she signed the agreement the apartment actually had been renting for $725 per month, that Ramirez–Eames timely notified Hover of her intent not to occupy the apartment, and that she volunteered to pay the leasing agent fee. While we do not wish to encourage interference with contractual relations, given the unique statutory language and factual

---

**1.** It is well established that "unconscionable" terms may include the price term, notwithstanding the UCC's general affirmation of the freedom of parties to agree to their own price term. *See, e.g., Zepp v. Mayor & Council of Athens,* 180 Ga.App. 72, 348 S.E.2d 673 (1986); *John Deere Leasing Co. v. Blubaugh,* 636 F.Supp. 1569, 1572 (D.Kan.1986); *Lefkowitz v. ITM, Inc.,* 52 Misc.2d 39, 275 N.Y.S.2d 303 (1966). *Compare, Patterson v. Walker–Thomas Furniture Co.,* 277 A.2d 111 (D.C.1971) (allegation of excessive price, standing alone, insufficient to support defense of unconscionability), *with, American Home Improv. Inc. v. MacIver,* 105 N.H. 435, 201 A.2d 886 (1964) (discrepancy between sale price and value of goods or service supported claim of unconscionability). Similarly, although the New Mexico Uniform Owner–Resident Relations Act generally affirms the ability of the parties to reach their own agreement on rental price, we believe the equity provisions must be construed as a limitation on this ability.

predicates before it, we believe there was authority and substantial evidence upon which the trial court could find the agreement to pay $850 per month was $125 (17¼%) over the market value, was inequitable, and should not be enforced.

Based on the foregoing considerations, we affirm the decision of the trial court.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.

SCARBOROUGH, J., dissents.

SCARBOROUGH, Justice, dissenting.

I must dissent because I believe the majority opinion opens the way for judicial supervision of residential rents under a nebulous "inequity" standard concerned with the "underlying fairness" of rental agreements. If a court may limit a rental agreement under the facts of this case, where the sole evidence of "overreaching" is an unsubstantial deviation between the fair market value as found by the court, and the agreed upon amount of rent, then innumerable rental agreements are now fair game for litigation or renegotiation.

The court below based its ruling on principles of equity without specifically identifying the principles involved. Certainly the facts of this case, as the majority acknowledge, do not warrant a finding of unconscionability as argued by Ramirez–Eames. To uphold the ruling the majority rely on a statute not argued by the parties to the trial court nor argued to this Court, and then interpret that statute to provide for a radically lower standard of substantive unfairness than the common law unconscionability standard of equity. The solution is inventive, but I cannot believe that this was the intent of the legislature when it adopted the Uniform Owner–Resident Relations Act even taking into consideration the use of the term "inequitable" rather than "unconscionable."

The facts of this case raise no question of unconscionability. On that basis, without *sua sponte* raising the applicability of the Uniform Owner–Resident Relations Act, this Court should reverse the judgment of the district court. I dissent.