Lauriat, J.
On August 13, 1994, the facility at 65 North Beacon Street in Boston owned by New Balance Athletic Shoe, Inc. (“New Balance”) was severely damaged by fire. New Balance alleges in this action that tire cause of the fire was an electrical power surge caused by and emanating from equipment owned and operated by the Boston Edison Company (“Boston Edison”). New Balance has brought claims for negligence (Count I) and breach of warranty under the Uniform Commercial Code (“UCC”) (Count II). G.L.c. 106, §§2-315, 2-316. Boston Edison has now moved to dismiss Count II. During the hearing, both parties agreed that the court should treat the motion as one for summary judgment. Mass.R.Civ.P. 12(b).
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
*546 In Count II, New Balance advances a theory of liability analogous to a product liability claim. Massachusetts has not adopted a “true” strict product liability theory as set forth in §402A of the Restatement Second of Torts. However, our courts have reached essentially the same result via a breach of warranty analysis under the Uniform Commercial Code. Actions alleging breach of warranty are governed by the provisions of the Uniform Commercial Code. Hayes v. Ariens Co., 391 Mass. 407, 412 (1984). Essentially, the breach of warranty analysis encompasses all of the policies found in §402A. Colter v. Barber-Greene Co., 403 Mass. 50, 61 (1988).
Accordingly, the critical question raised by this motion is whether electricity is a “good” as defined in the Uniform Commercial Code. See G.L.c. 106, §2-105. If the answer to this question is in the affirmative, as New Balance asserts, then the sale of electricity may be subject to the warranty provisions of the Uniform Commercial Code. If so, then upon this record, an action for breach of warranty may survive summary judgment scrutiny. If, however, electricity is found not to be a “good” as defined by the Uniform Commercial Code, the warranties in the Uniform Commercial Code would not apply and Count II must fail as a matter of law. See G.L.c. 106, §2-102 (UCC applies only to the sale of “goods”).
New Balance contends, and the court agrees, that the issue presented by this case is one of first impression in this Commonwealth. Other jurisdictions that have adopted the Uniform Commercial Code have wrestled with this issue. For example, Indiana has subjected public utility companies to liability for producing electricity by holding that the sale of electricity does involve the sale of a “good” under the Uniform Commercial Code. See Helvey v. Wabash County REMC, 151 Ind. App. 176, 278 N.E.2d 608 (1972). Indiana has limited this holding to cases where the electricity has passed the customer’s electric meter. See Petroski v. Northern Indiana Pub. Serv. Co., 171 Ind. App. 14, 354 N.E.2d 736 (1976). Indiana supports this conclusion by finding that electricity is a thing existing and moveable. The court in Helvey, applying the definition of a “good” under the Uniform Commercial Code, said “(l]ogic would indicate that whatever can be measured in order to establish the price to be paid would be indicative of fulfilling both the existing and moveable requirements of goods.” Helvey, 151 Ind. App. 176, 178, 278 N.E.2d 608, 610 (1972).
This court, however, is troubled by the sweeping implications that this analysis may have on public utilities. One can foresee a logical extension from electric companies to providers of natural gas and water. Courts in Georgia and Pennsylvania have made this extension. See Gardiner v. Philadelphia Gas Works, 413 Pa. 415, 197 A.2d 612 (1964) (applying breach of warranty analysis to case involving provider of natural gas). This application of tire Uniform Commercial Code has also implicated municipalities who provide water. See Gall v. Allegheny Health Dept., 521 Pa. 68, 555 A.2d 786 (1989) (applying breach of warranty analysis to water supplier); Zapp v. Mayor & Council of Athens, 180 Ga. App. 72, 348 S.E.2d 673 (1986) (holding that water is a “good” as defined in the Uniform Commercial Code).
Boston Edison asserts that public utilities are so heavily regulated that this fact should place them outside the traditional scope of tort and contract law, at least under the circumstances of this case. This argument is not without merit. Product liability law is rooted in public policy considerations. Hayes v. Ariens Co., 391 Mass. 407, 412 (1984). These considerations may not be as important when the defendant is a public utility company.
The court seeks to protect the public by policing companies who participate in the open market. The court accomplishes this policing by imposing a duty on companies to “prevent the release” of defective products onto the market. Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 355 (1983) (citations omitted). The reasons underlying this important role may not be as compelling in cases involving public utilities, since public utilities in many respects cannot be compared to companies competing on the open market to sell a product. Public utilities are subject to stringent regulations. Regulators control entry into the business of providing a public utility. Utility companies undertake a public duty to provide service. Moreover, a public utility has to comply with a closely regulated rate or price schedule. Thus, public utilities do not slip easily into the category of companies that require the imposition of product liability to adequately protect the consumer. See Torts of Electric Utilities: Can Strict Liability Be Plugged In?, 11 Loy. L.A.L.Rev. 775 (1978).
New Balance has not pointed this court to any Massachusetts law, statutory or otherwise, which compels the result it seeks. In light of the regulatory role of the legislature in this area, this court is not inclined to indulge injudicial legislation. The decision to expose public utilities to liability for their “products” is best left in the capable hands of the legislative body that is charged with regulating those utilities.
Accordingly, this court finds that electricity is not a “good” as defined in the Uniform Commercial Code. There is therefore no basis to apply the warranty-provisions of the Uniform Commercial Code. Count II of New Balance’s complaint must fail as a matter of law.
ORDER
For the foregoing reasons, Boston Edison’s Motion for Summary Judgment on Count II of New Balance’s complaint is ALLOWED.