A98A0254, A98A0255. MANAGEMENT BY DESIGN, INC. et al.
v. LAKEVIEW UTILITIES, INC. et al.; and vice versa.
(505 SE2d 37)

POPE, Presiding Judge.

Management by Design, Inc., Charles Sirmans, Ray Stevens, Complete Mobile Homes, Inc. and Phyllis Slaght sued Lakeview Utilities, Inc., Martha Bailey, and Martin McDonald. Plaintiffs and defendant Bailey own rental lots and mobile homes in Lakeview Estates Subdivision. Lakeview Utilities is an unregulated private utility which is the exclusive governmental franchisee for the delivery of water and sewer services to the subdivision. Bailey is the president and sole shareholder of Lakeview Utilities. Defendant McDonald was an officer of Lakeview Utilities and a consultant on environmental matters.

In 1995, plaintiffs filed the instant complaint, alleging that Bailey and the defendants unreasonably raised water and sewer rates in order to make plaintiffs' lots unrentable and gain control of all property in the subdivision. In their 21-page complaint, plaintiffs alleged that defendants' actions violated the Sherman Antitrust Act, constituted fraud, and constituted federal and state RICO violations. Plaintiffs sought injunctive relief and sought damages for lost rental income and property and for payment of excessive water rates. Plaintiffs also sought damages for defendants' violations of the Sherman Antitrust Act and sought treble damages for the violations of the RICO statutes.

The case was tried and the court granted McDonald's motion for directed verdict. The jury found the water rates unreasonable almost in their entirety and awarded plaintiffs $24,539 in damages against defendants Bailey and Lakeview. In Case No. A98A0254, plaintiffs appeal; Case No. A98A0255 is the cross-appeal. Divisions 1 and 2 review the enumerations of error in the main appeal; Divisions 3 through 8 resolve the cross-appeal enumerations. For the following reasons, we reverse both cases.

*Case No. A98A0254*

As stated above, in this case plaintiffs appeal from denial of their motions for new trial and for relief from the judgment.

1. First, plaintiffs contend that the trial court improperly deprived them of an opportunity to litigate their claims for damages under RICO and the Sherman Act. Based on the following facts, we agree.

Plaintiffs filed a pretrial motion under OCGA § 9-11-42 (b) to sever the trial of the issues relating to the reasonableness of the rates from the trial of the alleged RICO and antitrust violations and

other claims for damages. Plaintiffs' motion clearly stated that it sought to sever the issue of "the unreasonableness of the charges for water and sewer" from the other claims asserted in the action. In the affidavit supporting the motion, plaintiffs stated: "[a] separate trial of the latter [other] claims should be had for the reason that the moving parties plaintiff will be prejudice[d] by a single trial of all claims because they would have gone out of business or have been ruined financially as they need immediate relief from the exorbitant charges that are imposed by the defendants in order to rent their mobile homes and lots or they will be out of business before the other issues are reached and the other issues can conveniently be tried separately."

The trial court granted the motion to sever, stating in its order: "[t]he Plaintiffs seek to sever the issue of the reasonableness of the charges for water and sewer utility services and other related charges. *While the Defendants argue that this will cause them to try the case twice,* the court finds that severance will further the interests of convenience, judicial economy and fairness, as well as reduce any unnecessary prejudice that might otherwise be occasioned by the Plaintiffs. It is clear that OCGA § 9-11-42 (b) was designed for such a purpose." (Emphasis supplied.)

The case was tried before a jury. At the conclusion of the first phase of the trial, the court charged the jury regarding reasonable rates for water services and the meaning of unconscionability. The court then instructed the jurors that if they found for plaintiffs, they would then need to indicate on the special verdict form whether various charges for water, sewer, hook-ups and other services were reasonable or unreasonable. The jury concluded that most of the various rates were unreasonable and returned a plaintiffs' verdict.

The court then instructed the jury that the case had been bifurcated and that the jurors would need to determine the appropriate amount of damages, if any, to award. After the evidence was presented, the court explained that the jury was to determine the issue of damages based on the rules regarding compensation.[1] Plaintiffs did not seek RICO or antitrust damages and the court did not give any charges on these claims. The jury returned a plaintiffs' verdict for $24,539.

After trial, plaintiffs filed a motion for new trial and a motion for relief from judgment, arguing that the court had failed to set a date for the trial of the remaining issues (i.e., the RICO and antitrust) and had failed to extend discovery with respect to those remaining issues.

---

[1] As discussed in Division 6 (b), a part of the court's charge regarding damages was improper.

The court denied the motions, in essence ruling that plaintiffs' case had ended. The court's order concluded that plaintiffs' understanding of the order granting their motion to sever was incorrect. The order stated that the grant of the motion to sever did not mean that the case would be recessed or that plaintiffs would be allowed to select a second jury to hear the RICO and antitrust issues. Instead, the court stated plaintiffs had abandoned their additional claims by not raising them during the first phase of the trial.

We agree with plaintiffs that the order granting the motion to sever indicated that their claims for RICO and antitrust would be tried separately. The court's order granting the motion did *not* state that the issue of damages and liability would be severed; it simply granted plaintiffs' motion, as requested. Plaintiffs' reasonable understanding of the trial — based on the granting of their motion to sever — was that it would involve the issue of reasonableness of the rates only. Their portion of the pretrial order which was submitted to the court, but never entered, also supports this interpretation.

Once the trial began, plaintiffs proceeded on their belief that the other issues had been severed and would be tried separately. Plaintiffs did not, as the trial court concluded, abandon their other claims; rather they thought that they would try their other claims separately. The trial court's reference to the bifurcation of liability and damages on the issue of the unreasonableness of the fees was not inconsistent with its granting of the motion to sever and would not have altered plaintiffs' understanding. Furthermore, plaintiffs' efforts to recover lost rental income and property were not inconsistent with this understanding, because those damages were also part of the claim of unreasonable fees. Accordingly, the court erred in refusing to hear evidence on the remaining issues and should have granted plaintiffs' post-trial motions.

2. Based on Division 1, we conclude that the trial court erred in dismissing defendant McDonald from the suit because issues remained to be tried.

### Case No. A98A0255

Defendants cross-appeal from the judgment and from the denial of their motion for new trial.

3. In their first enumeration, defendants contend that the court erred in denying Bailey's motion for directed verdict after the first phase of the trial. We disagree and conclude that factual issues remained in the case because, for the reasons stated above, the grant of the motion to sever necessarily preserved the claims against Bailey, the president and sole shareholder of Lakeview. Moreover, plaintiffs' claims regarding the unreasonableness of the rates were viable

against Bailey as well as against Lakeview. Thus, regardless of the correctness of the trial court's assessment that factual issues remained as to whether plaintiffs pierced Lakeview's corporate veil, the motion for directed verdict was properly denied.

4. Defendants contend the trial court erred in denying their motion for directed verdict as to Lakeview. They first argue that plaintiffs did not show that the rates were unreasonable. There was evidence that Lakeview's minimum rates were significantly higher than those charged by its governmental franchisor; that Lakeview significantly increased the required deposit; and Lakeview imposed a minimum charge of $15 per month even for unoccupied property. Because there was evidence supporting plaintiffs' claims that the rates were unreasonable, the trial court did not err in denying the motion for directed verdict. See generally *Roberts v. Chapman*, 228 Ga. App. 365, 366 (1) (492 SE2d 244) (1997).

Secondly, citing several cases including *Zepp v. Mayor & Council of Athens*, 180 Ga. App. 72 (348 SE2d 673) (1986), defendants argue that the court should have determined the reasonableness of rates, because this was not a jury issue. Defendants fail to cite to any place in the record or transcript where this contention was raised and preserved for appellate review; accordingly, this argument was waived.

5. The enumeration of error concerning the court's use of a certain form for the jury verdict is deemed abandoned as it is not supported by argument or citation of authority. Court of Appeals Rule 27 (c) (2).

6. Jury instructions are the focus of the next enumeration.

(a) Over defendants' objection, the court charged the jury at the end of the first phase that the standard by which the company's action was to be judged was that of reasonableness. As authority for this charge, plaintiffs cited *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 578 (4) (396 SE2d 562) (1990), which involved the question of how much of a public utility's investment in an allegedly imprudent investment (a nuclear power plant) could be charged to ratepayers. The prudence standard set forth in *Ga. Power* is not applicable here. But in the context of the other charges — and particularly since the court also charged the jury, without objection, that the question for its determination was whether Lakeview's rates were reasonable, the error was not harmful.

(b) After conclusion of the evidentiary portion of the second phase of trial, the court charged the jury that "the measure of damages is your enlightened conscience as an impartial juror." Defendants objected, but neither they nor plaintiffs requested jury instructions on any other measure.

The charge given is proper when no other measure is prescribed. See OCGA § 51-12-6 (injury to peace, happiness, or feelings of the

plaintiff); *Stubbs v. Harmon*, 226 Ga. App. 631, 632 (1) (487 SE2d 91) (1997) (measure of damages for pain and suffering and for loss of consortium is the enlightened conscience of fair and impartial jurors); see also *Roberts v. Chapman*, 228 Ga. App. at 367 (3) (same standard for punitive damages). Where the "enlightened conscience" standard applies, damages may be recovered without proof of any amount. In contrast, plaintiffs' asserted damage claims here *did* require proof of amounts; the damages claimed were not analogous to a tort claim where general damages can be awarded on this basis. See generally *Richards v. Wadsworth*, 230 Ga. App. 421, 424 (4) (496 SE2d 535) (1998). Particularly because this trial involved *only* the issue of the unreasonableness of rates and related compensatory claims, the charge was improper. The charge authorized the jury to award damages to plaintiffs on different damage elements without any such proof. Such instruction constitutes reversible error, and a new trial is necessary. See generally *Ga. Power Co. v. Womble*, 150 Ga. App. 28, 31 (2) (256 SE2d 640) (1979).

(c) On the other hand, it was not error to overrule defendants' objection to the omission of a charge on nominal damages. No such request was made before the charge, and no formulated curative instruction was suggested after the charge.

7. Defendants argue that the court erred in denying their motion for directed verdict for failure of plaintiffs in general, and Management by Design in particular, to prove damages. With respect to Management by Design, we conclude that the motion was properly denied, because there was evidence during the first phase of the trial as to that plaintiff's damage. Moreover, for the reasons outlined in Division 1, the motion was properly denied because of the claims remaining to be tried.

The motion was properly denied as to the remaining plaintiffs both for the reasons outlined in Division 1 and because they presented evidence at the trial sufficient for the jury to award damages.

8. Because a new trial is required, the court's grant of plaintiffs' post-trial motion for attorney fees and litigation expenses must be reversed. See generally *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (2) (475 SE2d 601) (1996).

*Judgments reversed. McMurray, P. J., Blackburn, Ruffin and Eldridge, JJ., concur. Andrews, C. J., and Beasley, J., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

1. As acknowledged by the majority, plaintiffs in their pretrial motion sought to sever the trial of the issues relating to the reasonableness of the water and sewer rates from the trial of the alleged

RICO and antitrust violations "and other claims for damages." The other damage claims were for payment of excessive water and sewer rates and for lost rental income and property. The court granted the severance motion and then held a bifurcated trial. At the first phase of the trial, issues relating to the reasonableness of the rates were litigated. At the second phase, plaintiffs sought damages for payment of excessive rates and lost rental income and property but not RICO or antitrust damages.

The issue is whether plaintiffs are entitled to a second trial on those damage claims not tried at the latter phase of the first trial. In denying plaintiffs' post-trial motions, the court stated that such motions were filed by an attorney who had not participated in pre-trial proceedings or in the trial itself, and that plaintiffs' trial attorney agreed to, and in fact recommended, the bifurcated trial as a substitute for separate trials. Nothing shows the court agreed to a three-part proceeding by trying some damage issues in a bifurcated trial and the remaining damage issues in a separate trial. The result was an abandonment of those claims for damages not asserted at the bifurcated trial.

Plaintiffs' argument, that the understanding at trial was that the second phase would involve the issue of the reasonableness of the rates only, is contradicted by the fact that they asserted their claims for lost rental income and property as well as for payment of excessive water rates at the trial. Moreover, an understanding that either damage claim was part of plaintiffs' claim of unreasonable water and sewer rates would have been wholly inconsistent with their pretrial motion, which sought separate trials of the issue of unreasonable rates and all claims to recover damages.

The pretrial order proposed by plaintiffs excluded damage issues from consideration at trial. The bifurcated trial procedure agreed to by plaintiffs was obviously inconsistent with the proposed pretrial order.

2. In the main appeal, error is also enumerated in the total grant of McDonald's motion for directed verdict at the conclusion of the first phase of the trial, in that he was not entitled to such on the RICO and antitrust claims. For the reasons given above, no merit underlies this enumeration.

3. I do find the first enumeration of error in defendants' cross-appeal to be meritorious.

The denial of Bailey's motion for directed verdict after the first phase of trial was grounded on there being questions of fact as to whether plaintiffs pierced the corporate veil of Lakeview so that Bailey was liable in her individual capacity for corporate acts.

"[T]he mere operation of corporate business does not render one personally liable for corporate acts. (Cit.) Sole ownership of a corpo-

ration by one person or another corporation is not a factor, (cit.), and neither is the fact that the sole owner uses and controls it to promote his ends. (Cit.) There must be evidence of abuse of the corporate form. (Cit.) Plaintiff must show that defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control. (Cits.)"[2]

The required ingredients were not presented. Plaintiffs do not even argue now that the evidence justifies ignoring the corporate entity but instead assert that Bailey was sued in her individual capacity on the RICO and antitrust counts. These claims were abandoned. Bailey's motion for directed verdict should have been granted.

I concur with the holdings in the remaining divisions of the majority opinion and therefore agree that the judgment in the cross-appeal (Case No. A98A0255) should be reversed. But I would affirm the judgment in the main appeal (Case No. A98A0254).

I am authorized to state that Chief Judge Andrews joins in this opinion.

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 31, 1998 — 

*Richard Young, David B. Irwin*, for appellants.
*Hartley & Puls, Carl A. Puls, Jr., Bodker, Ramsey & Andrews, Harry J. Winograd, Thomas Rosseland*, for appellees.

---

[2] (Punctuation omitted.) *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306 (2) (404 SE2d 607) (1991).